## JOHNSTON v. DILL et al.

No. 21092.    Sept. 12, 1933.

Rehearing Denied Oct. 3, 1933.

**166**

Ames, Cochran, Ames & Monnet, for plaintiff in error.

Martin L. Frerichs, for defendants in error.

BAYLESS, J. This is an appeal from the district court of Okfuskee county, Okla., involving the title to real estate, and there are several parties interested, thereby rendering it impracticable to refer to them in this opinion otherwise than by name.

The history of the title to this property is substantially this: The land was allotted to a Creek Indian whose heirs sold it to H. A. Dolen, who took the title as trustee for Willard Johnston and W. H. Dill. Dolen then conveyed the property to C. T. Huddleston, who in turn conveyed it to M. B. Flesher. All of these parties took the title to the property as trustees for Johnston and Dill. Flesher then mortgaged the property for $3,000, turned the proceeds of this mortgage to Johnston and Dill, and conveyed the property to them. In 1912 Johnston and Dill deeded the north half of this land to one Johns and the south half to one Dahlinger. Johnston and Dill then became unfriendly, and when the mortgage put upon the property by Flesher became due it was foreclosed, and at the foreclosure sale, December 28, 1915, Johnston was the successful bidder over his erstwhile friend and business associate. Johnston received a sheriff's deed to this property on March 27, 1916, and in 1918 contracted to sell the property to Sizemore. Upon examination of the abstract, Sizemore discovered that Dill had, on October 8, 1918, filed of record a caveat, claiming an undivided one-half interest in the property. The deal between Johnston and Sizemore, when finally completed, was on these conditions: Johnston gave Sizemore a deed, Sizemore paid him $2,000 in cash, executed notes for $6,000, the balance of the purchase price which were placed in escrow, and gave Johnston a mortgage to secure these notes, which mortgage was recorded March 12, 1919; and Johnston and Sizemore entered into a written contract whereby it was agreed that Sizemore should institute an action against W. H. Dill to quiet title to the real estate, that Johnston should bear all of the expenses of the litigation, that if Sizemore was successful in defeating W. H. Dill, Johnston should withdraw the notes from escrow and the deal between himself and Sizemore would be fully consummated; but if W. H. Dill should defeat Sizemore, then Sizemore should reconvey the land to Johnston, paying him $450 per year rent for the use of the land, and Johnston should repay to Sizemore the $2,000, with interest at 8 per cent. per annum and surrender the notes and release the mortgage. Sizemore instituted an action, out of which this appeal finally arose, against W. H. Dill to quiet title, basing his title to the property upon quitclaim deeds given to him by Johns and Dahlinger. W. H. Dill, who had in the meantime and prior to the deeds relied upon by Sizemore obtained a deed from Johns to the north half of this property, set up his deed by way of defense and claimed to own all of the property. This controversy was carried forward until sometime in 1920, when W. H. Dill gave a deed to his interest in this property to Glenn E. Dill, his son, whereupon Sizemore entered into an agreement with W. H. Dill and Glenn E. Dill by which he would deed them the property and dismiss the action. Johnston, learning of this, appeared in the action and sought to intervene and prevent the settlement with the Dills, contending that he was the real party in interest and that Sizemore was merely his representative. Johnston was denied this opportunity by the trial court, and, upon appeal to this court, reported as Sizemore v. Dill, 93 Okla. 176, 220 P. 352, we remanded the matter to the district court of Okfuskee county,

with instructions to permit Johnston to intervene.

Johnston then filed a petition in intervention, in which he claimed title to the real estate involved herein, and sought to quiet his title. W. H. Dill then filed an answer to this petition in intervention in which he contended that he and Johnston had been tenants in common in the ownership of this real estate at all times, that the purchase of the property at the sheriff's sale in 1915 by Johnston was for the use and benefit of the tenants in common, and generally alleged facts tending to establish his ownership of an undivided one-half interest in and to the property and to quiet title thereto. Glenn E. Dill filed an answer to the petition in intervention, alleging that Sizemore had conveyed the real estate to him and that he was the owner of the same and in possession of the property, and further set up certain equitable defenses by way of estoppel, and alleging that the cause of action set up in the petition in intervention was a departure from the issues raised between Sizemore and W. H. Dill, and sought appropriate relief for himself. The trial court heard the matter and much evidence was introduced. The parties then had a transcript of the evidence made up and filed briefs with the trial court in support of their various contentions, and after a lengthy examination of the issues and evidence, the trial court rendered judgment to the following effect: (1) That Johnston and W. H. Dill had been tenants in common at all times and that W. H. Dill was the owner of an undivided one-half interest in this property at the time Johnston conveyed it to Sizemore, subject to W. H. Dill's liability to Johnston for one-half of the money expended in purchasing the property at the sheriff's sale and protecting it since; and (2) that the deed from Johnston to Sizemore was in effect merely the transfer of one-half of the property called for in the deed; that Glenn E. Dill had succeeded to Sizemore's interest; that Johnston was not entitled to rescind said transaction, and that Glenn E. Dill was the owner of the other one-half of said property subject to the lien of the unpaid balance of one-half of the purchase price agreed upon between Johnston and Sizemore. The effect of this judgment was not to divest Johnston of title to the real estate, but to give him a lien upon W. H. Dill's one-half interest for the money above specified and a mortgage lien or an equitable lien upon Glenn E. Dill's interest for the money above specified. The judgment further ordered an accounting between Johnston and W. H. Dill as to the equities arising between them by virtue of their relation as tenants in common.

In our opinion there are but two questions necessary to be discussed for a full determination of the matter here on appeal, namely: (1) Were Johnston and W. H. Dill tenants in common as to this real estate from and after the foreclosure sale in 1915? and, (2) Is Johnston entitled to rescind the contract as between him and Sizemore and to cancel the instruments made in pursuance of it?

It has not been disputed, up to the time of the sheriff's sale and the extinguishment of the title which Johnston and W. H. Dill obtained from the heirs of the Indian allottee, that they were tenants in common. The dispute now arises as to the effect of the foreclosure sale upon their respective interests in and to the property. It is the contention of W. H. Dill and those opposing Johnston that the rule stated by us in Arthur v. Coyne, 32 Okla. 527, 122 P. 688, applies:

"Cotenant owners of an estate in lands stand in a relation to each other of mutual trust and confidence, and neither will be permitted to act in hostility to the other in reference to the joint estate; and a distinct title acquired by one will ordinarily inure to the benefit of all."

On the other hand, Johnston contends that the exception to the rule, as stated in 38 Cyc. 43, applies:

"The rule above stated is qualified in some cases, which hold that the purchase of an outstanding interest must be interpreted according to surrounding circumstances and that the rule obtains only where the relation of tenancy in common exists in strictness and where the relation is such as to require mutual trust and confidence."

The evidence upon the duties and agreements of Johnston and W. H. Dill, after the beginning of their enmity prior to the foreclosure action in 1915, in so far as it pertains to the mortgage and its foreclosure, is conflicting. Therefore, under the rule announced by this court in Nix v. Brogan, 118 Okla. 62, 251 P. 753:

"Where a question of fact arising in the trial of an equity case has been decided in the trial court upon the conflicting evidence, on appeal the evidence will be viewed and considered by the appellate court; but the finding of the trial court will not be disturbed because of alleged insufficiency of the evidence, unless it is made to appear that the finding is against the clear weight of

168

the evidence"—it becomes our duty to examine the evidence introduced upon this point and to weigh the same to determine whether or not the trial court arrived at a correct finding. The evidence on the part of Johnston, and that most favorable to him, shows that Dill refused to contribute his pro rata share toward the payment of the mortgage when it became due; that Dill was advised that Johnston was going to appear at the mortgage sale and buy it in for himself; that Dill knew that Johnston did appear at the mortgage sale by his attorney and bid the property in over the unsuccessful efforts of Dill to purchase it himself; that Dill treated the deeds given by him and Johnston to Johns and Dahlinger as a partition of the common estate by taking from Johns, without the knowledge of Johnston, a deed to the north half of the property, and after Johnston purchased this property at the sheriff's sale in 1915, Dill permitted him to go into possession of it, to pay for it, to own and exercise dominion over it, and took no steps to contest his right until in 1918, when he learned of Johnston's intention to sell it, when he filed of record a caveat. On the other hand, Dill's testimony, and that part of the record most favorable to him, shows that he denied refusing to pay his share of the mortgage, that he had an agreement with Johnston previous to the sale that Johnston was to bid the property in at the sheriff's sale for their joint use, or in recognition of their tenancy in common, and it shows his reason for appearing at the sale and bidding in opposition to Johnston, but he gives no explanation whatever of his acquiescence in the foreclosure proceedings, nor in Johnston's purchase and his course of conduct thereafter. We think the facts with reference to this question are similar to the case of Starkweather v. Jenner, 216 U. S. 528, 54 L. Ed. 602.

Under all of the facts, as shown by the record and examined and considered by us, we are of the opinion that the exception to the rule, or the qualification of the rule, contended for by Johnston, is supported by the greater weight of evidence in this record. We cannot avoid the conclusion that Johnston and Dill both acted, from the time of the deeds to Johns and Dahlinger, as though the land had been partitioned, and the relationship of tenancy in common between them was destroyed or abandoned. It would be useless for us to quote or to comment upon such generally accepted rule of law as that preventing one cotenant from acquiring title to the

estate in common to the prejudice of his cotenants in common, but it would be just as useless to cite the cases or comment upon the soundness of the qualification or exception to this rule. The parties both cite and argue for what they contended to be the majority and minority holdings upon both the rule and qualification of the rule. We again want to repeat what we said in Burt v. Steigleder, 132 Okla. 217, 270 P. 54:

"We have examined a number of authorities and decisions bearing upon the contention of each of the parties to this appeal, and are constrained to say that there appears to be no well defined fixed majority or minority rule in those cases which arise between cotenants upon a sale and purchase of real estate under mortgage foreclosure or deed of trust; that each case is largely decided upon the facts and equities of the particular case. We find well considered and reasoned opinions from the state and federal courts which show the exception or distinction from the ordinary or general rule that a cotenant may not acquire an outstanding adverse title as against his cotenant, when applied and arising in cases of foreclosure of mortgage liens against the common property."

Therefore, we hold, that the finding of the trial court that Johnston purchased for the benefit of himself and his cotenants at the foreclosure sale is against the clear weight of the evidence, and that his conclusion of law that W. H. Dill remained the owner of an undivided one-half interest therein, subject to his liability to Johnston and one-half of the purchase price, is erroneous, and we conclude and hold that Johnston became the owner of said real estate in fee simple for his own use and benefit at the foreclosure sale December 28, 1915.

Coming to the second question, we find that after Johnston went into possession of this property under the sheriff's deed, he was the owner until March 7, 1919, when he conveyed this property to E. D. Sizemore and entered into the contract with reference to the quieting of the title thereto.

A consideration of this transaction and the contract governing their efforts to quiet the title convinces us that it was not a limitation upon the deed given by Johnston to Sizemore, nor was it a reservation of any right or interest in the property to Johnston as against Sizemore, and only in the event Sizemore should lose the fruits of his contract by failing to quiet his title to the property or dispose of the claim of

the Dills, should title reinvest in Johnston. We are further of the opinion that this contract was not a restriction upon Sizemore's right to alienate this property or the title which he received from Johnston, subject to the full protection of Johnston's lien for the unpaid purchase price. Under these circumstances, we do not believe that the petition in intervention filed by Johnston and the evidence introduced in support of it stated a cause of action as against Sizemore or Glenn E. Dill, Sizemore's grantee. We believe, and hold, that when Sizemore entered into negotiations with W. H. Dill and Glenn E. Dill, by which he conveyed his interest in the property to them, he was doing merely what he and Johnston contracted to do, quiet title to the property for Sizemore's benefit; that he did so subject to Johnston's lien upon the property for the unpaid purchase price, of which the Dills had notice; that he was acting fully and wholly within his rights, and that he did not thereby do or commit any act which gave rise to a cause of action on the part of Johnston to rescind the contract.

We therefore conclude, and hold, that the deed from Johnston to Sizemore vested Sizemore with the fee title to the entire tract of land, that W. H. Dill's claim upon the same was without merit or foundation, that E. B. Sizemore's deed to Glenn E. Dill conveyed to him the fee-simple title to said real estate, subject to the mortgage referred to in said contract between Johnston and Sizemore.

Glenn E. Dill set up as against Johnston the defense of statute of limitations or laches as to the cause of action for the rescission of the contract. The trial court did not pass upon this, the evidence concerning it is to be found mostly in the instruments of record, and we do not feel that it played any part in the trial of the action. Although Johnston pleaded the execution of the contract between himself and Sizemore, also the execution of the notes and mortgage, he did not ask for a foreclosure of said mortgage, but asked for a rescission of the contract. In view of the fact that we are modifying the judgment of the trial court in several respects, and are relegating Johnston to a remedy which he had at all times, but did not see fit to avail himself of, we are holding that if he desires to institute an action within a reasonable time to foreclose his mortgage and the lien which he has for the unpaid balance of the purchase price, he shall not be deemed or held guilty of laches

or barred by the statute of limitations. We do this, not in general derogation of the usual rules governing limitations of actions and laches or stale claims, but rather in consideration of the extremely complicated nature of this transaction and the many and conflicting claims and contentions advanced by the various parties to this action and the difficulty which the trial court seemed to have had in getting the case below heard and disposed of.

As to that part of the judgment against the Prairie Oil & Gas Company canceling a lease given to it by Glenn E. Dill, we find no error and it is permitted to stand.

We are unable to determine definitely from this record whether there was, before the foreclosure sale in 1915, any need or reason for an accounting between Johnston and W. H. Dill, and we do not pass upon that point. As to that part of the court's order with reference to an accounting between them from and after the foreclosure sale in 1915, we believe it is disposed of by our holding that W. H. Dill had no interest in the property during said times.

The cause is remanded, with directions to proceed in conformity with the views herein expressed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BUSBY, and WELCH, JJ., concur.