## CHRISTBURGH v. ANDERSON, Adm'r.

No. 26774.    March 16, 1937.

Rehearing Denied April 6, 1937.

Aiden E. Allen, for plaintiff in error.

A. E. Pearson and Wesley A. Smith, for defendant in error.

PER CURIAM. This action was instituted in the district court of Oklahoma county by Mary J. Christburgh, plaintiff in error, against Forest Anderson. Thereafter by stipulation of the parties, Forest Anderson, as administrator of the estate of D. Harriet Anderson, deceased, defendant in error, was made a party defendant. Hereinafter the parties will be referred to as they appeared in the trial court.

Plaintiff's action was brought for the purpose of securing a judicial determination that D. Harriet Anderson, nee Christburgh, grantee in two deeds executed, respectively, on June 30, 1921, and April 19, 1922, held the legal title to the real estate described in said deeds in trust for the plaintiff. Plaintiff alleged that she paid the consideration for the property conveyed by said deeds, and that for business reasons the title was placed in the grantee, who was the daughter of the plaintiff. No claim was made that any duties were imposed upon the grantee other than the duty to reconvey.

Defendant Anderson by his answer and cross-petition alleged that D. Harriet Anderson paid the consideration for the deeds and that at the time of her death she was owner thereof; that during the month of May, 1927, said D. Harriet Christburgh and said defendant Anderson were married; that at the time of said marriage, there were large mortgages upon the property involved, and that during the month of July, 1927, said defendant "advanced and turned over to D. Harriet Anderson, nee Christburgh, between three and four thousand dollars, the exact amount being unknown at this time, but will be furnished at the trial, to pay off the mortgages to the Local Building & Loan Association," and he prayed that he be decreed to have a lien therefor.

In reply, plaintiff alleged that whatever money was given by defendant to his wife was given by said defendant "as an absolute and unconditional gift, to do with as his said wife, D. Harriet Anderson, saw fit to do with it, and was not given for the specific purpose of paying off the mortgages on the properties described by the defendant in his cross-petition and creating a lien thereon in favor of the defendant," and that after giving said money to his wife, defendant had no further control over it.

Two issues were thus clearly presented by the pleadings of the plaintiff and defendant, Anderson, as follows:

First. Was plaintiff the equitable owner of the real estate described in the deeds, with legal title resting in the grantee as trustee for plaintiff?

Second. Did defendant, Anderson, pay off and discharge the mortgages? If so, was he entitled to a lien to secure the repayment of the money so paid in satisfaction of the mortgages?

The evidence introduced was directed to these two issues. As stated, the administrator of the estate of D. Harriet Anderson, nee Christburgh, was not originally a party to the action. After the close of the evidence, the administrator was made a party defendant, but the case was submitted to the court for decision upon the evidence already introduced.

The court found the issues in favor of the plaintiff upon the first question involved. No appeal having been taken from that part of the judgment, it will serve no useful purpose to discuss the evidence upon that issue except in so far as the same applies also to the second question.

It appears that after the purchase of the property, the plaintiff arranged for and had constructed upon the premises some rent houses; that later plaintiff's daughter, in whom the legal title was vested, executed mortgages to secure funds with which to pay lumber bills incurred in the construction of the buildings. The daughter thereafter, during the month of May, 1927, was married to defendant, Forest Anderson, and died prior to the institution of this action.

Plaintiff testified that during the month of July, 1927, the daughter and defendant, her husband, drove to plaintiff's home and called plaintiff to the car and informed plaintiff that "We have got a surprise for you. We have been down and paid out your place and are going to send the deeds and abstracts to you. If it wasn't so late in the day, I have to go to Earlsboro, we would take you down and have your property transferred back to you"; and that defendant further stated that "They were fixing to go to Earlsboro and they did not want to leave me in debt, they wanted to leave me a living." This testimony was denied by defendant. The plaintiff's testimony was corroborated by Lola King, who testified that she was present when the daughter and defendant, Anderson, came to plaintiff's home, and that defendant stated: "Old lady, I have a surprise for you," and he said: "We have paid your mortgages off." Plaintiff then said: "You paid my mortgages off," and clapped her hands. Defendant said: "We have got a big surprise." The daughter said: "I wouldn't leave town before I got mother's property straight; I am going to Earlsboro to live." Mrs. Anderson said: "If it wasn't so late, we would take you to town for your deeds." Defendant, Anderson, further said: "We have instructed them to mail the releases out to the house and they will come by mail." Defendant denied this conversation.

Plaintiff further testified that she gave no authority to her daughter or her son-in-law, the defendant, to pay off the mortgages; that she did not request that the mortgages be paid off; that sometime after the mortgages were paid off the releases executed by the loan company were received through the mail from the county clerk's office; that she had been collecting the rents from the property and applying them on the monthly payments required by the mortgages; that she did not know that at the time the mortgages were paid off the same were subject to foreclosure.

On behalf of defendant, Anderson, the record shows that upon being asked as to who paid off the loans on the property, he stated: "I did." And he testified that he had been receiving royalty checks from his farm and that he endorsed one of them and delivered it to his wife; that he was not in Oklahoma City when the loans were paid off; that he did not go with his wife to plaintiff's home and there make the statement that the loans had been paid off; that when his wife wanted money he just signed a check to her; that the day his wife came up to pay the mortgage, she got the check and left; "I think I paid that with an oil check by signing an oil check to her," he said; that he would not have furnished the money to pay off the mortgages if he had known that the property did not belong to his wife; that when the money was furnished to pay off the mortgages, he did not have the title examined, and made no requirement that the same be assigned to him for his protection; that his wife merely requested him to advance the money and he did so, thinking it was her property.

Another witness for defendant was Ethel Anderson, a daughter, who testified that she heard the deceased daughter of plaintiff say that "dad had paid off the mortgage on her property and she was glad of it."

A representative of the building and loan company stated that so far as the records showed, D. Harriet Christburgh paid off the mortgages, but that he did not know who actually paid them; that he was testifying from the records of his office, he being auditor of the company.

At about the conclusion of the testimony on behalf of the defendant, Anderson, the trial judge said:

"Well, now, here is the way it looks to me, I might as well tell you, if this property belonged to the plaintiff and was held in trust by Dee Harriet Christburgh, Dee Harriet Anderson, and Forest Anderson made these payments and they were voluntary payments, he could not be subrogated. The only way under these circumstances in which he could acquire a lien would be the right of subrogation to the original mortgagee, and it being a voluntary payment, he couldn't be subrogated."

The trial was had on February 14, 1934. On February 15, 1935, the record shows that by stipulation Forest Anderson, as administrator of the estate of D. Harriet Anderson, was made a party defendant; that he entered his appearance and by stipulation all pleadings, process, etc., were to be binding upon the respective parties as fully as though said action had been originally brought against Anderson individually and Anderson as administrator. The journal entry of judgment, filed April 11, 1935, recited that the case was tried on February 14, 1934, and that after the plaintiff and defendant, Anderson, had introduced their evidence and rested:

"The court announced orally from the bench that he would find the issues as to the title of the property herein involved in favor of the plaintiff and that the property hereinafter described was held in trust by D. Harriet Anderson, deceased, but subject to the right of the administrator of the estate of D. Harriet Anderson, being Forest Anderson, to certain moneys advanced as hereinafter set out."

On March 9, 1934, the administrator filed an answer and cross-petition wherein he adopted the answer and cross-petition theretofore filed by Forest Anderson, "except that he alleges that the money the defendant, Forest Anderson, claimed to have advanced to the plaintiff on the 14th day of July, 1927, was money advanced by the deceased, D. Harriet Anderson, during her lifetime, and that therefore should the court decree that the plaintiff is the legal and equitable owner in fee simple title of the property in litigation herein, said decree should be subject to a lien for the amount advanced by the said D. Harriet Anderson in favor of this answering defendant."

Plaintiff on the same day filed her answer to the cross-petition of the administrator and alleged that the money used to pay off the mortgages constituted a gift by D. Harriet Anderson to her mother, the plaintiff.

Nothing further was done in the case until April 5, 1935, when plaintiff asked leave to amend her answer in order to plead the statute of limitations against the claim of the administrator. Leave was denied. On the same day plaintiff asked permission to enter a demurrer to the evidence of the administrator, which was likewise denied.

On the same day the court rendered judgment decreeing plaintiff to be the owner of the property involved; that D. Harriet Anderson, nee Christburgh, at all times held the legal title in trust for plaintiff; that Forest Anderson gave to his wife the money with which to satisfy the mortgages on the property; that plaintiff knew the mortgages had been paid off, and that since plaintiff claimed said D. Harriet Anderson held the title in trust for plaintiff, the estate of said D. Harriet Anderson, as a matter of equity, had a lien on the property for the money paid to take up the mortgages, in the amount of $3,132.39, and found and decreed that defendant, Forest Anderson, had no right, title or interest in the property, and rendered judgment in accordance with the findings. On hearing the motion for new trial, the court decreed that the money judgment should bear interest from March 9, 1934.

Plaintiff has appealed to this court and contends that the judgment should be reversed upon the following grounds:

(1) That the judgment decreeing a lien for the money paid in discharge of the mortgages is clearly against the weight of the evidence.

(2) That since defendant, Anderson, alleged that the money used to satisfy the mortgages was defendant Anderson's money and that since Anderson, as administrator, adopted the pleading of Anderson, individually, the administrator is bound by the pleading filed by defendant, Anderson, and is precluded from recovering the money so paid.

(3) That the facts stated in the cross-petition were insufficient to entitle the administrator to a lien, and that the court exceeded its jurisdiction in decreeing a lien.

(4) That D. Harriet Anderson paid no money and parted with nothing of value, and that the court had no authority to render judgment in favor of her estate for an equitable lien.

(5) That the statute of limitations has run against any lien.

(6) That plaintiff was denied her right to properly defend against the cross-petition filed after trial by the administrator.

Opposing the grounds urged for reversal,

defendant, Anderson, as administrator, contends:

(1) That D. Harriet Anderson was trustee of the property involved, and, having advanced funds for the protection of the trust property, is entitled to be reimbursed.

(2) That where a gift is first asserted after death of the donor, proof thereof must be clear and convincing; that such a claim is looked upon with suspicion by the courts, and that a mere preponderance of the evidence is insufficient to prove such a gift.

(3) That the maxim, "He who seeks equity must do equity," applies, and requires that where a trustee has advanced funds for the plaintiff's use and benefit, the plaintiff is barred from pleading laches or the statute of limitations.

As we view the record and the evidence, the judgment should be reversed. The action is of an equitable nature; it is the duty of this court to weigh the evidence in order to ascertain whether the judgment is reasonably supported by the evidence. Upon a review of the evidence, it is our view that the trial court failed to render judgment in accordance with the clear weight of the evidence, in so far as the claim for a lien is concerned. In such a case, it is the duty of this court to reverse the judgment. De Matte v. Clark, Sheriff, 174 Okla. 297, 50 P. (2d) 342.

The trial court found that plaintiff was the legal and equitable owner of the property involved; that the grantee in the deeds held the legal title in trust for the plaintiff. In the absence of any contract or understanding between the parties, such a trust is an inactive one; no duties or liabilities, by virtue of the conveyances alone, were thereby imposed upon the trustee. As between the equitable owner and the trustee, there was imposed upon the trustee no duty to expend money in protection of the estate, nor any liability for failing so to do. In the case of Bobier v. Horn, 95 Okla. 8, 222 P. 238, the facts were that J. R. Bobier and wife executed a warranty deed to their son, Thomas E. Bobier, under facts which created a resulting trust as in the case at bar. A mortgage covering the property was reduced to judgment; Thomas E. Bobier paid the judgment. In litigation involving title to the property, he claimed the right to be subrogated to the lien of the judgment which he paid. Discussing the question, this court said:

"On the other hand, if Thomas E. Bobier was not the owner in fee of said lands, by virtue of the deed from J. R. Bobier and wife, but, as the trial court found, held only the naked legal title in trust for his grantors, then his title was not such as would authorize or permit him to pay said liens and invoke the doctrine of equitable subrogation, for the reason that he had no legal and equitable interest to protect. The payment of these demands, liens, or judgments was for the benefit of the cestui que trust, and not for the trustee. One who pays the debt of another must have acted under compulsion to save himself from loss. It is only when the person pays the debt to protect his own interest that equity will substitute such person to the position of the creditor without an agreement to that effect; otherwise, the debt is extinguished, and he who pays it is a volunteer or intermeddler without an interest to protect."

The principle announced is applicable here and conclusively disposes of the contention that the daughter, because she was trustee of a resulting trust, could voluntarily pay the mortgages and be subrogated to the rights of the mortgagee.

But we have the additional question here: Does the fact that the daughter executed the mortgages and thus became bound personally for the mortgage debt subrogate her to the rights of the mortgagee upon payment of the debt? We are not advised by the pleadings filed in the case as to the exact theory of subrogation; the judgment does recite that "as a matter of equity" the lien should be decreed. The cross-petition filed by the administrator did not plead sufficient facts to show any right of subrogation; that pleading simply alleged that the money used to pay the debt "was money advanced by the deceased during her lifetime." Pleading payment of another's debt, with nothing more, does not show right of subrogation. In Connecticut Fire Ins. Co. v. Williams, 130 Okla. 15, 264 P. 881, this court held that "subrogation is an affirmative action or defense which must be pleaded by the party claiming it." The general rule is stated in 60 C. J. 833, as follows:

"The bill, complaint, or petition to establish and enforce a right of subrogation should clearly and distinctly state the facts which give rise to the right claimed."

Although it appears that the daughter of plaintiff, who was grantee in the deeds, executed the mortgages, and that the borrowed money was used in payment of lumber bills incurred in the construction of houses upon the premises, there was no allegation that the daughter was accommodation maker for the plaintiff; if she was an accommodation maker, then as between the

daughter and the mortgage company, she was a principal; but as between the plaintiff and the daughter, maker of the mortgages, the daughter was surety for the mother, who was the true owner of the property. Treating the daughter, then, as surety for the true owner, upon payment of the debt she would have all the rights of a surety paying the debt of a principal. 8 C. J. par. 427. And would be entitled to pursue the same remedies against the plaintiff as the mortgagee could assert against the maker of the mortgage, unless the payment of the mortgage debt was voluntary and intended as a discharge and extinguishment of the debt. McClure v. Johnson, 10 Okla. 663, 65 P. 103; Pendergraft v. Phillips, 57 Okla. 105, 156 P. 1189. Upon the question of the extinguishment of the debt, the rule is stated in 60 C. J. par. 30, as follows:

"If the facts and circumstances show definitely that at the time of payment the right of subrogation was not intended to be exercised, but, on the contrary, that the purpose was not to keep the debt alive but to extinguish it, then the right of subrogation cannot be held to exist."

This court in the Pendergraft Case, supra, held:

"Whether payment of the note by a surety operates as an extinguishment of the note or a mere purchase thereof is a question of intention."

In the body of the opinion, it was said:

"If the note is simply paid and nothing be said or done to show a contrary intendment, an extinguishment will be presumed."

Plaintiff contends that the evidence clearly shows that defendant, Anderson, paid the mortgage debt while defendant, Anderson, as administrator, claims that D. Harriet Anderson, deceased, paid the debt. Since we are of opinion that the evidence shows there was no intention to keep the debt alive, it is immaterial whose money was used in payment of the debt. At the time the case was tried, the issue was raised by the pleading of Anderson, defendant, that he paid the debt, and was entitled to a lien. The evidence, of course, was directed to that issue. Defendant, when asked who paid the mortgage debt, answered: "I did." It developed that the method of payment was the use of a royalty check payable to defendant, Anderson, and endorsed by him and delivered to his wife. Defendant stated that when his wife wanted money, he just signed a check to her; that she asked him for a check with which to pay off the loans involved, and that he complied with her request by endorsement of the royalty check payable to him. Plaintiff contended that the money used in payment of the loans constituted an unconditional gift by defendant, Anderson, to his wife; defendant, as already stated, claimed that the money was his and that he paid the debt. After the close of the evidence and the announcement by the court that defendant, Anderson, could not recover because he was a volunteer, the same defendant, but in his new capacity as administrator, claimed that the money used to pay the debt was money of his deceased wife, and that he, as administrator, was entitled to a lien to secure its repayment. The evidence already before the court was by agreement the evidence upon which the issues made by the new party defendant were to be determined. It is our view that the court properly held that defendant, Anderson, had no cause of action, but erroneously held that Anderson, as administrator, had proved a case for himself as administrator while attempting to prove a case for himself individually.

Under the doctrine of the Pendergraft Case, supra, proof of payment of the debt would create the presumption of extinguishment. In this case there is not only the presumption of extinguishment, but the evidence clearly indicates the intention of the parties to extinguish the debt. As to the intention of the Andersons, plaintiff testified that defendant, Anderson, and his wife came to her home and stated that the mortgages had been paid off. On that occasion defendant said to plaintiff that they did not want to move to Earlsboro and leave plaintiff in debt; plaintiff's daughter at the same time stated that she would not leave "before I got mother's property straight." Plaintiff had not asked her daughter nor had she asked defendant, Anderson, her son-in-law, to pay the mortgages. While denied by defendant, Anderson, the testimony of the plaintiff is corroborated by another witness who was present and heard the conversation. At the same time defendant stated that instructions had been given that the releases of the mortgages be sent to the plaintiff. This also was denied by defendant. However, the releases were sent to plaintiff by the county clerk. Plaintiff had been collecting the rentals from the property and applying the same on the monthly payments due on the mortgages. Defendant stated that he would not have furnished the money with which to discharge the mortgages had he not thought that the property belonged to his wife; but, having furnished the money, it would hardly be reasonable to conclude that

he intended that the debt be kept alive on property which he thought belonged to his wife. The claim of subrogation is inconsistent with the fact that the deputy county clerk, who received the releases from some one, was instructed by that person that the releases were to be sent to the plaintiff at her address in Oklahoma City. If defendant, Anderson, believed the property belonged to his wife, the same belief would probably have been entertained by his wife also. But the wife, according to defendant, came to Oklahoma City and paid the mortgages. Presumably, she is the one who received the releases and filed them and gave instructions that they be sent to the plaintiff. If defendant, Anderson, or his wife then had the idea that they would pay the debt and keep it alive for the protection of the one paying the debt, it is hardly conceivable that the releases would be returned to the plaintiff, as they were. All these facts and circumstances are consistent with the testimony of the plaintiff and another witness that on the occasion of the visit of defendant, Anderson, and his wife to plaintiff's home, defendant stated that he had a "surprise" for the plaintiff; that surprise was the payment of the mortgage debt which plaintiff had been paying off in monthly installments from rentals. No assignment was taken of the mortgages; no examination of the titles; simply a payment without anything being done indicating a purpose other than the payment of the debt so that the daughter of plaintiff and defendant, Anderson, could move to Earlsboro and leave the mother with property free from debt. During the intervening years from July, 1927, until March, 1934, nothing was said or done indicating that the debt was not totally extinguished in July, 1927.

Upon the record, it is our view that the judgment should be reversed for insufficiency of both pleadings and evidence to show any right of subrogation.

Since no appeal was taken from the judgment in so far as it quieted title in the plaintiff, that part of the judgment remains unaffected by this reversal. In view of the disposition of this appeal, it is unnecessary to discuss the other questions raised.

The Supreme Court acknowledges the aid of Attorneys C. J. Davenport, F. A. Speakman, and J. E. Thrift in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Davenport and approved by Mr. Speakman and Mr. Thrift, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was modified and adopted.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.