WALLACE et al. v. BROOKS et al.

No. 30890. Feb. 8, 1944.

Rehearing Denied April 18, 1944.

*147 P. 2d 784.*

Orr & Woodford, of Holdenville, for plaintiffs in error.

Busby, Harrell & Trice, of Ada, for defendants in error.

RILEY, J. This is an appeal from a judgment and decree against plaintiffs in error, who were plaintiffs below, in an action wherein they seek to establish a trust in oil, gas, and other mineral rights in and under a tract of land which had been sold to the defendant Lillian Brooks under an order of sale in a mortgage foreclosure proceeding.

In 1929 the defendant Walter Brooks purchased the land here involved, consisting of 525.48 acres, situated in Hughes county, from the plaintiff B. C. Wallace. At that time said land was mortgaged to the Federal Land·Bank to secure an indebtedness of about $10,-

000. In the deed from B. C. Wallace to Walter Brooks, Wallace reserved to himself one-half of the oil, gas, and other minerals in and under said land, together with a right of ingress and egress for the purpose of developing same. As a part of the consideration, Walter Brooks assumed and agreed to pay the mortgage indebtedness to the Federal Land Bank. This was expressly provided in the deed.

On October 1, 1931, B. C. Wallace sold, and by mineral deed conveyed, to J. H. Rogers, Thomas E. Nix, and W. G. Rogers, trustees of Pan Mutual Royalties, a trust estate, one-fourth interest in and to all the oil, gas, and other minerals in and under said land. For some two or three years the defendant Walter Brooks paid the installments on the mortgage, but defaulted on the payments due for the years 1932, 1933, and 1934, and also failed to pay the taxes on said land. In November, 1934, the Federal Land Bank brought suit to foreclose the mortgage. B. C. Wallace and his wife, Walter Brooks and his wife, and Pan Mutual Royalties were made parties defendant. Brooks and wife and Wallace and wife did not answer or otherwise appear. Pan Mutual Royalties appeared, setting up its interest, and prayed for the marshaling of assets and that in case of sale the land be first offered subject to its mineral rights. On July 29, 1935, judgment and decree of foreclosure was entered. The court in that action held that defendant Walter Brooks had assumed and agreed to pay the mortgage indebtedness, and personal judgment was entered against him. B. C. Wallace was served by publication, and judgment in rem only was entered as to him. The decree ordered that if the judgment was not paid within six months the land be sold without appraisement. It also provided that the land be first offered for sale subject to the mineral rights of Pan Mutual Royalties.

The judgment was not paid, and in due course an order of sale was issued and the land sold at sheriff's sale. At the sale Walter Brooks, George Oliphant, an attorney representing either Walter or Lillian Brooks, or both, and C. O. Lucas, attorney for the Federal Land Bank, were present. The land was bid in in the name of Lillian Brooks, who is a daughter of defendant Walter Brooks, on a bid of $12,000. The sale was confirmed on March 19, 1936, and sheriff's deed was issued to Lillian Brooks. On the same day, this action was commenced by B. C. Wallace and Mary Wallace, his wife, and Pan Mutual Royalties, by and through its trustees above named, against Walter Brooks, Alice Brooks, and Lillian Brooks, wherein the plaintiffs seek an order and decree declaring that the defendant Lillian Brooks holds said land in trust for the benefit of plaintiffs as to the undivided one-half of the oil, gas, and other minerals and mineral rights, that is, one-fourth to plaintiffs B. C. Wallace and Mary Wallace, and one-fourth to Pan Mutual Royalties, and for a decree quieting title in plaintiffs accordingly.

As grounds therefor plaintiffs allege in substance the facts stated above, and further allege that at the time Walter Brooks acquired said land and assumed and agreed to pay said mortgage, he was a man of considerable wealth; that he owned and possessed real and personal property of a value in excess of $50,-000, and was amply able to pay and satisfy said mortgage indebtedness or respond in damages for his failure so to do; that in order to avoid his obligation and agreement and in order to cheat and defraud plaintiffs of their mineral rights in said land, he entered into a conspiracy with the defendant Alice Brooks, his wife, and Lillian Brooks, his daughter, and in furtherance of such conspiracy, without any consideration, he made and transferred to Alice and Lillian Brooks and others his lands and personal property, and then, being without money or property, failed, neglected, and refused to pay the mortgage indebtedness, which resulted in the foreclosure of said mortgage and the sale of said land; that Walter Brooks in truth and in fact is and was the purchaser of said land at said sheriff's sale

with the money and funds of said Walter Brooks; that defendants Alice Brooks and Lillian Brooks acquiesced in and contributed to said conspiracy and scheme so as to make it appear that the mineral rights of plaintiffs were extinguished by said sheriff's sale and deed, and that in truth and in fact, although the legal title was vested in Lillian Brooks, under the facts and law Lillian Brooks became and is now trustee in said land for said Walter Brooks and these plaintiffs.

The defendants Walter Brooks and Alice Brooks answered separately by general denial and disclaimer of any right, title, or interest in the land. The defendant Lillian Brooks answered separately denying the allegations of the petition except as to certain specific admissions, and alleged in substance that the purchase was made by her in good faith with funds of her own; that the remedy of marshaling assets sought and obtained by plaintiff Pan Mutual Royalties amounted to an election of remedies by that plaintiff.

Reply was by general denial, and the issues thus joined were tried to the court, resulting in the general findings in favor of defendants and judgment for defendants.

There are 12 assignments of error, but plaintiffs in error group them all under one general proposition: "That the judgment is contrary to law and contrary to the evidence."

It is first asserted that the evidence shows that Walter Brooks was the real purchaser of the land at the foreclosure sale and that the legal title was placed in the name of his daughter, Lillian Brooks, for the purpose of defrauding plaintiffs.

This is an action in equitable cognizance, and it is well established that in such an action this court on appeal will review and weigh the evidence, and if it appears that the judgment is clearly against the weight of the evidence, will reverse the same and render or cause to be rendered such judgment as the trial court should have rendered. Sticelber v. Iglehart, 169 Okla. 453, 37 P. 2d 638; Christburgh v. Anderson, 179 Okla. 552, 66 P. 2d 902; Mid-Continent Petroleum Corporation v. Bettis, 180 Okla. 193, 69 P. 2d 346; Finley & Lollar v. Dean, 184 Okla. 456, 88 P. 2d 366.

There is but little conflict in the evidence, and where there is conflict, that part of the evidence is of little importance. There is some conflict as to who did the actual bidding at the sheriff's sale. Plaintiffs' witnesses, the officer who conducted the sale, and Lucas, attorney for the Federal Land Bank, testified that as they remember it, the defendant Walter Brooks placed the bids in behalf of Lillian Brooks. However, they both admitted their memory was not clear on the question and that they might be mistaken. On the other hand, both Walter Brooks and George Oliphant testified positively that the bids other than those by the attorney for the Federal Land Bank were placed by George Oliphant, and that it was he and not Walter Brooks who directed that the successful bid be entered in the name of Lillian Brooks. On most all other matters the evidence is without substantial conflict. The evidence clearly shows that at the time and for several years after defendant Walter Brooks purchased the land here involved, and assumed and agreed to pay the mortgage indebtedness, he was the owner of some four or five thousand acres of land and some town property in Hughes county; that in the latter part of 1933 and the early part of 1934 he conveyed 2,250 acres of land and some town lots to Alice Brooks, his wife, as a gift. About the same time he conveyed 920 acres of land to his daughter Lillian Brooks, and about the same amount each to two other daughters. These transfers were admittedly in the nature of gifts. These conveyances were explained by defendant as being brought about because of pending legislation providing for heavy inheritance taxes, and that Brooks wished to divide his property at that time so as to avoid inheritance taxes in case of his death, and that he was not in good health at the time.

Immediately after the sheriff's sale the sheriff and Walter Brooks went to the bank and Brooks purchased a cashier's check for $12,000, payable to the sheriff. To procure this check he deposited in the bank, in the name of Lillian Brooks, $12,170.58, and then drew a check against said deposit to pay for the cashier's check. It is shown that of this sum $6,468.75 was obtained by cashing certificates of deposit standing in the name of Alice Brooks in different banks; $600 was procured by cashing a deposit standing in the name of Lillian Brooks; $101.83 was the interest due on the certificates. This amounted to $8,170.58. Walter Brooks then executed his individual note to the bank and borrowed thereon the sum of $4,000, which was deposited to the credit of Lillian Brooks, making the total deposited $12,170.58.

Plaintiffs contend that the $4,000 borrowed by Walter Brooks was his individual money, and that to that extent he unquestionably furnished money toward the purchase price at the sheriff's sale. But this item is explained by a showing by defendant Lillian Brooks that she had theretofore loaned her father $2,500 to discharge a mortgage held by one J. P. Davidson. She produced the canceled check showing such payment by her. This was also shown by a ledger account kept between Walter Brooks, his wife, and daughter, entered at the time of the transaction. She also showed loans to her father at other times amounting to something more than $835. She testified that these loans were all settled and in fact paid back to her through the $4,000 loan made by Walter Brooks and deposited to her credit.

The evidence as a whole, however, shows that all the $12,000 paid for the sheriff's deed was derived from the land transferred by Walter Brooks to his wife and daughter; some of it was from sale of part of the land; some was from sale of oil and gas leases, royalties, etc., and some from agricultural tenants. The evidence also shows that after the transfer of the land to his wife and daughter, defendant Brooks continued to manage and control the same substantially as before the transfer. The evidence, however, is that he did so as the agent of the respective owners, and this is to some extent borne out by the ledgers and book accounts kept between the various parties and entries made therein before this controversy arose.

The basis of plaintiffs' contention in this regard is: (1) that the transfer of the land by Walter Brooks to his wife and daughters as gifts comes within the provisions of sections 10007, 10008, and 9697, O. S. 1931 (Title 24, sections 5, 6, and 10, O. S. 1941), and were therefore void as to plaintiffs as creditors and obligees of defendant Walter Brooks, and that the income therefrom and the proceeds of the sale of any part thereof, in law and equity, belong to Walter Brooks, and therefore it was his money that went to pay for the land bought at the sheriff's sale in the name of Lillian Brooks; (2) that defendant Walter Brooks was cotenant with plaintiffs as to the oil, gas, and other minerals in and under the land here involved and that he, Brooks, could not purchase the land at foreclosure sale and thereby exclude his cotenants from any interest therein, and that when he did so, though in the name of his daughter, Lillian Brooks, she holds the legal title in trust for him and that a like trust arises in favor of plaintiffs as against the defendants Walter Brooks and Lillian Brooks.

On the latter question, defendants present a counter proposition that in a purchase of lands at mortgage foreclosure sale a cotenant is not disqualified as a purchaser to take and hold title for himself, and that it is therefore immaterial whether the money for the purchase at the sheriff's sale was furnished by defendant Walter Brooks or by defendant Lillian Brooks.

Plaintiffs in their reply concede that if Walter Brooks could lawfully buy land at the sale in his own name, no fraud was perpetrated against the

plaintiffs by the use of the name of the daughter.

We must then consider the admitted facts and uncontroverted evidence as to whether the transfers by Brooks of the land is within Title 24 O.S. 1941, sections 5, 6, or 10, providing against sale and transfer of property in fraud of creditors.

Title 24 O.S. 1941, section 6, relates to transfer of personal property not accompanied by immediate delivery of possession and has no application here since there is no evidence of such attempted transfer.

Title 24 O.S. 1941 § 10 provides:

"Every conveyance of real estate or any interest therein . . . made without a fair and valuable consideration . . . shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

Whether defendant Walter Brooks was at the time of the conveyances indebted to plaintiffs within the meaning of the statute, liberally construed as it must be, is questionable. However, he was under obligation to pay the mortgage indebtedness against the land here in question, not to, but for the benefit of, plaintiffs. Therefore, if the transfer of the real property by Walter Brooks "without fair and valuable consideration" was void as to plaintiffs, it must be because of the provision in Title 24 O.S. 1941 § 10, supra.

The effect of the transfers was to render defendant Walter Brooks unable to pay the mortgage indebtedness. When asked why he did not pay, he answered that he was unable to do so and would not undertake it. Except for the transfer of the principal part of his real estate to his wife and daughters, he would have been able to pay the indebtedness. The evidence clearly shows that at all times after he conveyed the land to his wife and daughter he managed and handled the same in all respects the same as he had before, whether acting for himself or as agent. There is evidence that he was acting as the agent of his wife and daughter. He made all the deals, sales of small tracts of land, oil and gas leases, etc., and leases to agricultural tenants whereby the money was obtained to buy the land at the sheriff's sale. Had he kept title and made all these transactions and applied the proceeds to the payment of his obligation on the mortgage, he would have had ample funds with which to discharge the mortgage indebtedness except for the $4,000 which he borrowed at the time of the sale.

In one sense it may be said that Walter Brooks was indebted to the plaintiff Wallace. When Brooks purchased the land here involved he agreed to pay therefor something over $13,000. A part of this consideration was that Brooks assume and pay the entire mortgage indebtedness to the Federal Land Bank. He did not pay, and it may with reason be said that he did not pay the full consideration or purchase price of the land. He did not agree to pay the mortgage indebtedness to Wallace, but he clearly agreed to pay it as a part of the purchase price of the land, and that was a legal liability which he assumed in favor of Wallace and for Wallace's benefit.

Applying the common-law rule (13 Eliz. ch. 5) in Allen v. Kane et al., 79 Wash. 248, 140 P. 534, it was held:

"The term 'creditor,' within the common-law rule that conveyances with intent to defraud creditors shall be void, includes not merely the holder of a fixed and certain present debt, but every one having a right to require the performance of any legal obligation, contract, or guaranty, or a legal right to damages growing out of contract or tort, and includes one entitled to damages for breach of contract to convey real estate, notwithstanding the abandonment of his action for specific performance."

In that case the court quotes with approval from Anderson v. Anderson, 64 Ala. 405, the following:

"The term creditors, as employed by the statute, has been construed liberally, and not in a narrow, strict, or tech-

nical sense. Whoever has a right, claim, or demand, founded on contract, whether contingent or absolute, for the performance of a duty, or for the payment of damages if the contract should not be fully performed, has been regarded as a creditor, within the meaning of the statute, against whom a voluntary conveyance will not be supported, though no breach of the contract, furnishing a cause of action, may occur until after the execution of the conveyance. Bibb v. Freeman, 59 Ala. 615; Foote v. Cobb, 18 Ala. 585; Gannard v. Eslava, 20 Ala. 732."

This seems to be the general rule. 27 C. J. 475; 24 Am. Jur. 279.

In Adams v. Wallace et al., 94 Okla. 73, 220 P. 872, it is held:

"The statutes against fraudulent conveyances should be liberally construed, so as to include within their protection all persons who have interests and demands of which they may be defrauded."

In this action plaintiffs had interests and demands of which they might have been defrauded.

Taking into consideration that our statute includes persons to whom the maker of the conveyance is at the time "under legal liability," and the foregoing authorities, we hold that the transfers under consideration were and are within said statute and void as to the rights of plaintiffs, and that, in equity, the money derived from the land so conveyed should be treated as the money and property of defendant Walter Brooks.

We come then to the proposition presented by defendants that Walter Brooks had the right to purchase at the foreclosure sale, to the exclusion of his cotenants, and that if it was his money which paid for the sheriff's deed, plaintiffs cannot complain.

In support of this proposition, defendants cite Ammann et al. v. Foster et al., 179 Okla. 44, 64 P. 2d 653, which holds:

"The rule that one tenant in common will not be permitted to acquire title to the common property solely for his own benefit, or to the exclusion of his cotenant, does not apply to a sale of real property sold at a bona fide sheriff's sale under a judgment foreclosing a mortgage on said property, where the consideration paid was adequate and fair and where it does not appear that the purchaser was guilty of fraud, deceit, or collusion, and where such tenant seeking to participate has been guilty of laches."

The decision in that case rests largely upon Johnson v. Dill et al., 165 Okla. 165, 25 P. 2d 283, and Starkweather v. Jenner et al., 216 U. S. 524, 30 S. Ct. 382, 54 L. Ed. 602. In Ammann v. Foster, supra, it is stated:

"It appears that there is a great divergence of judicial opinion regarding the effect of a purchase by tenant in possession of common property at a foreclosure sale thereof. See authorities cited in annotations, 6 A.L.R. 297, 54 A. L.R. 875."

The opinion also quotes with approval from Burt v. Steigleder, 132 Okla. 217, 219, 270 P. 54, 55, as follows:

"We have examined a number of authorities and decisions bearing upon the contentions of each of the parties to this appeal, and are constrained to say that there appears to be no well-defined fixed majority or minority rule in those cases which arise between cotenants upon a sale and purchase of real estate under mortgage foreclosure or deed of trust; that each case is largely decided upon the facts and equities of the particular case. . . ."

The general rule is that cotenant owners of estate in land stand in the relation to each other of mutual trust and confidence, and neither will be permitted to act in hostility to the other, and the distinct title acquired by one will ordinarily inure to the benefit of all. Purchase at foreclosure sale, where it is held that one cotenant may purchase on his own account and for himself alone, is an exception to the general rule.

In Ammann v. Foster, supra, laches enters into the decision. In Johnston v.

Dill, supra, hostility and competitive bidding between cotenants was one of the reasons for permitting one cotenant to purchase on his own account.

In Starkweather v. Jenner, supra, laches was considered as being a material element. There were also former attempts by the complainant to bid in the land for himself. In all these cases, and all others cited or which we have found, where a cotenant was permitted to purchase, such cotenant was under no obligation to pay the entire mortgage indebtedness. Each cotenant was liable for his own part of the indebtedness. In this case defendant Walter Brooks was under express contractual obligation to pay the entire mortgage indebtedness. This fact alone sufficiently distinguishes this case from all the cases cited by defendant. When defendant Brooks furnished the money for the purchase and paid the small deficiency, which fact the record discloses, he did no more than his contract called upon him to do, that is, he paid the mortgage indebtedness. The whole transaction should be treated merely as fulfillment of defendant Brooks' obligation and, in effect, payment of the mortgage indebtedness so as to release plaintiffs' interest in the land as against the sheriff's deed.

It is contended by defendants that plaintiff Pan Mutual Royalties is barred in this action by having requested marshaling of assets in the foreclosure proceeding. Upon what principle such plaintiff would be barred does not appear. Defendants cite no authority so holding, and we have found none.

The judgment and decree is reversed and the cause is remanded, with directions to enter judgment quieting title in plaintiffs to their respective one-fourth interest in the oil, gas, and other mineral rights in and under the land.

CORN, C. J., concurs in conclusion. OSBORN, BAYLESS, HURST, and ARNOLD, JJ., concur. GIBSON, V. C. J., and WELCH and DAVISON, JJ., dissent.

WELCH, J. (dissenting). I think the majority opinion constitutes an improper application of the statute 24 O. S. 1941 § 10. And as I view the record, the trial court should be affirmed as to the finding of facts. The opinion emphasizes the *allegations* of plaintiffs' petition, but the trial court found the facts to be against plaintiffs on the evidence.

I am authorized to say that GIBSON, V. C. J., and DAVISON, J., join in this dissent.