## AMMANN et al. v. FOSTER et al.

### No. 23443.  Jan. 19, 1937.

J. B. Dudley and Magee & Sturdevant, for plaintiffs in error.

Miley, Hoffman, Williams & France, Welty & Lafon, Allen & Jarman, Rittenhouse, Lee, Webster & Rittenhouse, W. N. Stokes, Geo. W. Grant, Check & McRill, Blakeney & Ambrister, John F. Martin, Hagan & Gavin, and Ray S. Fellows, for defendants in error.

OSBORN, C. J.  This action was instituted in the district court of Oklahoma county by Urgie Ammann, nee Smith, and Glen Smith, hereinafter referred to as plaintiffs, wherein it was sought to recover possession of and quiet title to an undivided two-thirds' interest in certain real property located in Oklahoma county. H. V. Foster and numerous other persons, firms, and corporations who owned various interests in and to the lands involved were made parties defendant. The trial court sustained demurrers to the amended petition. Plaintiffs elected to stand on their

pleadings, the cause was dismissed and plaintiffs have appealed.

The record shows that John D. Smith, the father of plaintiffs, was the owner of the land in controversy on May 1, 1899, on which date he, joined by his wife, Ethel Smith, executed a mortgage thereon to one J. K. Mitchell to secure payment of the sum of $900. Said parties at that time occupied the premises as their homestead. On January 20, 1900, John D. Smith died intestate, leaving as his heirs his widow, Ethel Smith, and his two children, the plaintiffs herein, both of whom were then minors, Urgie Ammann having been born April 21, 1895, and Glen Smith on January 28, 1898. On May 13, 1901, Ethel Smith, the mother of plaintiffs, conveyed her one-third interest by warranty deed to one Wyatt H. Botts for the sum of $1,000, and on or about that date removed from the premises which she and her family had theretofore occupied as a homestead and delivered possession thereof to Botts (the predecessor in title of defendants). On May 31, 1901, Mitchell instituted an action to foreclose his mortgage. Plaintiffs were then of the ages of six and three years, respectively, and were made parties defendant. The sheriff's return of summons shows that said minors were personally served with summons, but that no service was made on F. P. Johnson, who was then their general guardian. A judgment of foreclosure was entered on September 26, 1901, and on May 26, 1902, pursuant to order of sale duly issued, the property was offered at sheriff's sale and was bid in by Wyatt H. Botts. The sheriff's deed contains the following recital:

"And whereas, on the said 26th day of May, A. D. 1902, at 2:00 o'clock p. m. of that day, at the court house door aforesaid, the said sheriff did offer for sale and sell the lands and tenements hereinafter described to Wyatt H. Botts, of said Oklahoma county, at and for the cash price and sums as follows, viz: The sum of two thousand dollars for the undivided two-thirds interest of Glen Smith and Urgie Smith, in addition to the sum of money heretofore paid defendant, Ethel Smith, for her one-third interest, his being the highest and best bid made therefor."

The sheriff's deed is dated June 25, 1902, and was recorded June 26, 1902. The journal entry of judgment entered in the foreclosure action recites that the minors appeared at the trial of said action by their guardian ad litem, Selwyn Douglas.

Various other subsequent proceedings relating to the property in controversy are shown in the record, and discussed in the briefs, but for the purposes of this opinion it will not be necessary to outline said proceedings.

This action was commenced on January 16, 1930, 27½ years after the sheriff's deed was recorded and approximately 16 years after Urgie Ammann became of age and 11 years after Glen Smith became of age. Plaintiffs contend that the judgment of foreclosure above referred to is void on its face for the reason that the record shows that no lawful service was had upon plaintiffs. It is not necessary to determine the question so presented. The principal defense is that plaintiffs' action is barred by the statute of limitations and the recording of the sheriff's deed is sufficient to set the statute of limitations in operation. Group v. Jones, 44 Okla. 344, 144 P. 377; Stolfa v. Gaines, 140 Okla. 292, 283 P. 563.

It is urged by plaintiffs that the trial court erred in sustaining demurrers to their petitions on the ground that the action was barred by the statutes of limitation. Their theory is stated in the brief as follows:

"We realize that if the defendants have held plaintiff's two-thirds interest in this property exclusively under a claim of adverse ownership for any period of time, which by the Code, bars the plaintiffs' right of recovery, whether that period be one, two, three, five or fifteen years, then the defendants have title by prescription. It is our contention that under the circumstances alleged in our petition, plaintiffs and defendants were at all times cotenants of said land; that the possession of one was that of all and referred to the common title; that defendants' possession could not become adverse until they did some act repudiating plaintiffs' title and brought notice home to plaintiffs of such adverse claim; that since a minor cannot take notice of adverse claims to real property during their minority, defendants' possession could not become adverse until after the plaintiffs attained majority, and in this particular instance, after the youngest plaintiff attained his majority.

"By the process of elimination, we find the only statute of limitations applicable to be section 183, subd. 4, C. O. S. 1921, barring an action for the recovery of real property fifteen years after the possession of defendants becomes adverse. The material question then will become 'When did the defendants' possession become adverse?' We submit that under the allegations of this amended petition, defendants' possession could not become adverse until after the youngest plaintiff, Glen Smith, at-

tained his majority, to wit: January 28, 1919. Then and then only, was it possible for the fifteen-year period of adverse possession to commence. Furthermore, after Glen Smith attained his majority, defendants must have committed some act constituting an ouster of their cotenants in order to start the adverse possession upon which to base a title by prescription."

It therefore appears that it is immaterial which particular provision of the statutes of limitation is applicable. Plaintiffs' sole right to recovery is predicated upon the proposition that from the time of the execution and delivery of the deed from their mother to Wyatt H. Botts, they were tenants in common with him; that when he purchased the property at the foreclosure sale the purchase inured to the benefit of all the tenants in common and that his possession was their possession, and as a matter of law they were not ousted from possession until Botts, their cotenant in possession, committed an act of ouster against them.

The question of ouster of an infant cotenant was treated in a supplemental opinion prepared by Mr. Justice Gibson in the recent case of Wirick v. Nance, 178 Okla. 180, 62 P. (2d) 997, wherein it was held that the statute of limitations does not begin to run in favor of one cotenant in possession against another cotenant until actual ouster by the former, or some other act or acts on his part amounting to a total denial of the rights of the latter, and until notice or knowledge of the act relied on as an ouster is brought home to him; that the notice or knowledge required must be either actual, or the act or acts relied upon as an ouster must be of such open and notorious character as to be notice of themselves or reasonably sufficient to put the disseized cotenant on inquiry which, if diligently pursued, will lead to notice or knowledge of the fact; that the rule applies alike to minors and adult disseized cotenants; that the same acts and declarations which constitute an ouster apply to an infant as well as to an adult, whether the notice of ouster be actual or presumptive; that a cause of action immediately accrues to an infant upon being denied possession of his realty; that when the cause accrues, the statute commences to run, and by legislative grace (sec. 100, O. S. 1931) minors are allowed two years after majority to assert their rights by proper action. It was concluded in that case that the minor could have maintained her action for possession at any time within the 15 years from the date the statute commenced to run, or if the 15 years had run prior to the date of the majority of said minor, she was vested by legislative grace with an additional two years after majority in which to assert her rights.

It appears that there is a great divergence of judical opinion regarding the effect of a purchase by tenant in possession of common property at a foreclosure sale thereof. See authorities cited in annotations, 6 A. L. R. 297, 54 A. L. R. 875. The attitude of this court, however, is reflected in the following quotation from the body of the opinion in the case of Burt v. Steigleder, 132 Okla. 217, 219, 270 P. 54, 55:

"We have examined a number of authorities and decisions bearing upon the contentions of each of the parties to this appeal, and are constrained to say that there appears to be no well-defined fixed majority or minority rule in those cases which arise between cotenants upon a sale and purchase of real estate under mortgage foreclosure or deed of trust; that each case is largely decided upon the facts and equities of the particular case. We find well-considered and reasoned opinions from the state and federal courts which show the exception or distinction from the ordinary or general rule, that a cotenant may not acquire an outstanding adverse title as against his cotenant, when applied and arising in cases of foreclosure of mortgage liens against the common property.

"It is said in the body of the opinion in the case of Starkweather v. Jenner, 216 U. S. 528, 54 L. Ed. 602, 30 Sup. Ct. R. 382, 17 Ann. Cas. 1167:

"'But it is plain that the principle which turns a cotenant into a trustee who buys for himself a hostile outstanding title, can have no proper application to a public sale of the common property, either under legal process or a power in a trust deed. In such a situation, the sale not being in any wise the result of collusion nor subject to the control of such a bidder, he is as free, all deceit and fraud out of the way, as any one of the general public.'

"The following cases are in accord with the rule as announced in that case: Streeter v. Schultz, 45 Hun. 406; Hanley v. Federal Mining & Smelting Co., 235 Fed. 769; Day v. Hogans (Miss.) 93 South. 578; Jackson v. Baird, 148 N. C. 29, 19 L. R. A. (N. S.) 591, 61 S. E. 632; Troxler v. Gant, 173 N. C. 422, 92 S. E. 152; Kennedy v. DeTrafford (1897) A. C. (Eng.) 180, 66 L. J. Ch. (N. S.) 413, 76 L. T. (N. S.) 427, 45 Week. Rep. 671; Cotenancy, 7 R. C. L. sec. 59, p. 866."

In the case of Hodgson v. Federal Oil Co., 274 U. S. 15, 47 Sup. Ct. 502, 503, 71 L. Ed. 901, 54 A. L. R. 869, it was said:

"The rule as commonly stated forbids a cotenant from acquiring and asserting an adverse title against his companions because of the mutual trust and confidence supposed to exist; but the rule does not go beyond the reason which supports it. If the interests of the cotenants accrue at different times, under different instruments, and neither has superior means of information respecting the state of the title, then either, unless he employs his cotenancy to secure an advantage, may acquire and assert a superior outstanding title, especially where there is no joint possession. This exception to the general rule is recognized in Turner v. Sawyer, 150 U. S. 578, 586; Elder v. McClaskey, 70 Fed. 529, 546; Freeman on Cotenancy and Partition, sec. 155; Shelby v. Rhodes, 105 Miss. 255, 267; Sands v. Davis, 40 Mich. 14, 18; Joyce v. Dyer, 189 Mass. 64, 67; Steele v. Steele, 220 Ill. 318, 323."

See 77 A. L. R. 1504, anno. 1514; note 54 A. L. R. 886. See, also, authorities collected in the body of the opinion in the case of Turner v. Kirkwood, 49 Fed. (2d) 590 (cert. dis. 284 U. S. 635, 76 L. Ed. 540, 52 S. Ct. 18).

In the case of Arthur v. Coyne, 32 Okla. 527, 122 P. 688, it was held that a cotenant who acquired the interest of another cotenant in certain property without the knowledge or consent of the other took the legal title of his cotenant as trustee; but in that case it was shown that the purchasing cotenant acted surreptitiously and that in acquiring said property he committed a fraud against his cotenant.

In the more recent case of Johnston v. Dill, 165 Okla. 165, 25 P. (2d) 283, it was held:

"The general rule, that cotenant owners of an estate in land stand in a relation to each other of mutual trust and confidence, and neither will be permitted to act in hostility to the other in reference to the common estate, and a distinct title acquired by one will ordinarily inure to the benefit of all, is not applicable when the evidence discloses a hostility on the part of the cotenants towards each other and the common property is sold at public auction under a foreclosure proceeding where each cotenant participates in the bidding and no fraud is practiced by the successful bidder."

As heretofore stated by this court, the rule that an outstanding title acquired by a tenant in common is presumed to be for the common benefit is not an absolute rule, and may be qualified by circumstances surrounding the particular case. See 62 C. J. 458, par. 77. It would serve no useful purpose to discuss at length the authorities

relied upon by the plaintiffs. Suffice it to say there is involved in each of said cases some element not involved in the instant case. Plaintiffs do not allege fraud, deceit, conspiracy, or collusion. No complaint is made that the consideration for the purchase at the sheriff's sale was inadequate. The amount paid was considerably in excess of the mortgage debt. We find in this case no equities arising in favor of plaintiffs which would justify the application of the general rule. Giving due consideration to every element in this case and the authorities cited, we are driven to the conclusion that Botts was not disqualified as a purchaser at said sheriff's sale to take and hold title for himself. Starkweather v. Jenner, supra.

It is noted that this action was instituted 27½ years after the date of the recording of the sheriff's deed and 11 years after the youngest plaintiff became of age. There are thus involved other considerations which we deem it proper to notice. In the case of Gilb v. O'Neill, 225 Ala. 92, 142 So. 397, 85 A. L. R. 1526, it was held:

"Cotenants of one purchasing outstanding titles to common property must elect to avail themselves of benefits of purchases within reasonable time."

We quote further from the body of the opinion:

"Judge Freeman, in his admirable work on Cotenancy (2d Ed.) sec. 156, uses the following language in discussing the question now before the court: 'The right of a cotenant to share in the benefit of the purchase of an outstanding claim is always dependent on his having, within a reasonable time, elected to bear his portion of the expense necessarily incurred in the acquisition of the claim.' A most natural and material inquiry, then, is what is a reasonable time? To this inquiry no positive answer can be given. In this, as in all other questions in regard to reasonable time, no doubt each case must necessarily be determined upon its own peculiar circumstances. The cotenant asking a court of equity to award him the benefit of a purchase, must show reasonable diligence in making his election. Whatever delay he may have occasioned must be entirely consistent with perfect fair dealing on his part, and in no wise attributable to an effort to retain the advantage, while he shirks the responsibilities of the new acquisition."

The case of Stianson v. Stianson, 40 S. D. 322, 167 N. W. 237, 6 A. L. R. 280, involved a state of facts quite similar to the facts involved herein. We quote from the body of the opinion:

"Defendant had the right, as a cotenant, to purchase the property under an outstanding incumbrance, for his own protection. Mandeville v. Solomon, 39 Cal. 125; Stevens v. Reynolds, 143 Ind. 467, 52 Am. St. Rep. 422, 41 N. E. 931; Reed v. Reed, 122 Mich. 77, 80 Am. St. Rep. 541, 80 N. W. 996; Morris v. Roseberry, 46 W. Va. 24, 32 S. E. 1019; McFarlin v. Leaman (Tex. Civ. App.) 29 S. W. 44; 17 Am. & Eng. Enc. Law (2d Ed.) 639.

"For more than nine years these plaintiffs, with knowledge of all the facts, have slept upon their rights without seeking to participate in the benefits of the purchase by defendant of this property at the foreclosure sale, and without at any time offering to pay any share of the encumbrance on the land, or any of the taxes accruing thereon, for more than seventeen years. Plaintiffs are in no position to allege that they were without knowledge, during at least nine years, of every fact essential to the assertation of their legal rights. * * *

"Plaintiffs, with full knowledge, actual and implied, of all the material facts affecting their legal rights, have so long acquiesced in the acts of the defendant as to render the granting of relief inequitable and to charge them with laches such as will bar the assertion of their rights." Stevenson v. Boyd, 153 Cal. 630, 19 L. R. A. (N. S.) 525, 96 P. 284; Mandeville v. Solomon, 39 Cal. 125; Craven v. Craven, 68 Neb. 459, 94 N. W. 604.

See cases collected in the following notes: 85 A. L. R. 1538; 54 A. L. R. 910; 6 A. L. R. 297.

The judgment is affirmed.

BAYLESS, V. C. J., and WELCH, PHELPS, CORN, GIBSON, and HURST, JJ., concur. RILEY and BUSBY, JJ., absent.