ALLEN, County Treas., v. PHILPIN.

No. 30209. June 30, 1942.

*127 P. 2d 839.*

184

Douglas Garrett, County Atty., and P. W. Jones, Asst. County Atty., both of Muskogee, for plaintiff in error.

W. R. Banker and A. Camp Bonds, both of Muskogee, for defendant in error.

C. A. Ambrister, City Atty., Charles P. Gotwals, Wm. A. Killey, and James D. Gibson, all of Muskogee, amici curiae.

PER CURIAM. This appeal involves the question of the basis of computation for distribution of money received by the county treasurer for sale of vacant lots in the city of Muskogee, sold at the 1940 resale for delinquent taxes, paving and sewer assessments, where the lots sold for less than the total amount due. The sale was held under the provisions of article 31, ch. 66, S. L. 1939.

Section 3 of the act requires the county treasurer to publish notice of the proposed sale, showing the total amount of all delinquent taxes, costs, penalties, and interest, but it is not required that there be set forth the amount of taxes, penalties, interest, and costs accrued each year separately; it is sufficient to publish the total amount of all due and unpaid taxes, penalties, interest, and costs.

Section 5 of the act provides that vacant lots in any city or town, or any addition to a city or town, may be sold for any amount that is the highest bid therefor, but all other property must be sold for not less than two-thirds the assessed value thereof, or for the total amount of taxes, penalties, interest, and costs due thereon, whichever shall be the lesser.

Section 6 of the act provides that moneys received from individual purchasers, not redemptioners, and the tax moneys so collected, not including excess proceeds to be held for the owner, shall be credited and apportioned as the same would have been apportioned had they been paid at the proper time and in the proper manner, but that part of the money so collected representing penalties on ad valorem tax, listing fees, and publication costs shall be credited to the "Resale-Property Fund," as elsewhere provided in the act. Section 6 then provides:

" . . . In instances where vacant lots are offered for sale for both ad valorem taxes and special improvement taxes, but are sold for less than the total sum due, the county treasurer shall, after deducting the listing fees and publication costs, apportion the proceeds of such sale ratably between the ad valorem and special improvement tax accounts in the same ratio such proceeds bears to the total tax published as due for such resale."

The county treasurer of Muskogee county, hereinafter referred to as defendant, apparently under the advice of the State Examiner and Inspector, construed the latter provision to mean that in computing the percentage of amount to be credited to the respective funds, where there were delinquent special improvement assessments included in the sale, the total amount of the original taxes should be considered in the calculation without respect to penalties, etc., and to make distribution accordingly.

Defendant in error, hereinafter referred to as plaintiff, is the owner of a number of unpaid paving bonds issued by the city of Muskogee, for paving laid as far back as the years 1912 and 1913, and was also the owner of a number of special improvement warrants issued for the construction of sewers as far back as the same years.

In many instances involving vacant lots these special improvement assessments had been delinquent and unpaid since the years 1913 to 1922. In some cases these delinquent sewer assessments were for the years 1913 and 1914. All these special improvement assessments had been subject to penalty of 18 per cent per annum from as far back as the year 1913.

Plaintiff contended that all penalties, etc., should be included in computing the amount payable to each interest.

The defendant refused to make dis-

tribution as claimed by plaintiff, and this proceeding for mandamus was instituted by plaintiff to compel defendant to make distribution based upon the total amount of taxes, special assessments, interest and penalties.

The matter was presented to the district court, resulting in an order and decree awarding the writ as prayed, and defendant appeals.

The facts are not in dispute. All of the vacant lots sold may not have been charged with delinquent taxes, etc., for the same number of years, but the question of distribution would be the same without regard to the number of years of delinquency.

To illustrate the difference in result of the two methods of computation, the record of the sale of one particular lot is shown:

The ad valorem taxes were delinquent for the years 1926-1939, inclusive, and amounted to $48.72
The accrued penalties thereon were 15.29

Total ad valorem tax and penalties $64.01

Delinquent paving taxes were for the years 1913-1922, inclusive,
Principal $149.72
Penalties thereon 598.93

Total $748.65

Sewer assessments for 1913-1914 $ 27.58
Penalties 128.72

Total $156.30

Total ad valorem and special assessments (Principal) $226.02
Total penalties 742.94

Total ad valorem tax delinquencies, special assessments and penalties $968.96

The lot sold at resale for the net sum of $ 17.00

Defendant's theory is that the law requires him to apportion to the county a $ $\frac{48.72}{226.02}$ part or 21.556% of the $17.00 or $ 3.67
To paving assessment account 66.243% $ 11.26
To sewer account 12.202% 2.07

$ 17.00

Plaintiff's theory is that the apportionment should be:
To the County $ $\frac{64.01}{968.96}$ of $968.96 or 6.606% or $ 1.12
To paving account 77.263% or 13.14
To sewer account 16.131% or 2.74

$ 17.00

The difference, while small, considering the one lot sold for only $17, would be considerable, because it appears that several hundred vacant lots were sold at the resale for less than the total amount due.

Defendant asserts that the last sentence of section 6, supra, which requires the proceeds from the sales involved to be apportioned ratably between the ad valorem and special improvement account in the same ratio the proceeds of the property bear to the total tax published as due for such resale, is ambiguous in that it is impossible to determine what ratio is to be used, and there being an ambiguity, the court should give it the most reasonable and just interpretation as to legislative intent, rather than an interpretation unreasonable, unjust, or one that will lead to an absurdity.

This is a correct statement of the law, conceding there is ambiguity. Ledegar v. Bockoven, 77 Okla. 58, 185 P. 1097; Walton v. Donnelly, 83 Okla. 233, 201 P. 367.

Plaintiff contends that there is no ambiguity, in that the law provides the ratio to be based upon the total tax published as due, which necessarily means total tax, penalty, interest, etc., published as due.

The total amounts published as due did, and must, under the law, include

penalties, interest, etc. Section 3, supra, requires that the notice of resale contain the total amount of all delinquent taxes, costs, penalties, and interest accrued, due, and unpaid.

In view of the fact that this court has in many cases held that the penalty is no part of the tax (Board of Com'rs of Custer County v. City of Clinton, 49 Okla. 795, 154 P. 513; Estus v. State, 83 Okla. 181, 200 P. 1002; Board of Com'rs of Oklahoma County v. Close Bros., 82 Okla. 174, 198 P. 845; City of Guthrie v. Board of Com'rs of Logan County, 105 Okla. 237, 232 P. 22), and in view of the fact that the Legislature in the last sentence of section 6, supra, used the words "total tax published as due," omitting all reference to penalties, there is merit in the contention of plaintiff that there is no ambiguity in the law fixing the ratio for distribution.

We must then look to the act as a whole, as well as the law creating the penalties and providing for their distribution, to ascertain the intent of the Legislature.

In other parts of the act, as pointed out, the amount required to be published is the total amount of all due and unpaid taxes, penalties, interest, and costs. The only total amount published as due and unpaid must include the penalties, interests, and costs. It is therefore fair to assume, considering the act as a whole, that the Legislature intended in the use of the words "total tax published as due for such resale" that all the taxes, special assessments, penalties, interests, and costs should be included. This is made more apparent when we note the separate provision for disposition of penalties on ad valorem taxes, crediting money derived therefrom to the "Resale-Property Fund."

So far as street improvement (paving) bonds are concerned, the penalties provided by law for delinquent paving assessments must go, if necessary, to the fund for retirement of the bonds. That this in all cases must be true is recognized in section 13, ch. 66, S. L. 1939, wherein it is provided that where delinquent special improvement assessments were included in the original sale and when such lots are thereafter finally sold by the county, even after resale to the county, and deeds are issued for lots, the proceeds after having been paid to the county must be divided ratably between the "Resale-Property Fund" and the special improvement tax account, and that portion going to the latter account must be applied to the fund for the retirement of bonds and interest coupons of the improvement district in which the respective lots are located. This is because of the vested interest of the bondholders in the funds originally provided for the retirement of the bonds.

It has been repeatedly held that the laws, existing at the time of the issuance of special improvement bonds, enter into and become a part of the contract in such a way that the obligation of the contract cannot in any way be thereafter impaired or its fulfillment hampered or obstructed by a change in the law. Prince v. Ypsilanti Savings Bank, 140 Okla. 131, 282 P. 282; Straughn v. Berry, 179 Okla. 364, 65 P. 2d 1203; Davis v. McCasland, 182 Okla. 49, 75 P. 2d 1118.

With respect to the paving bonds here involved, it may be noted that they were issued under the provisions of article 12, ch. 10, Rev. Stat. 1910, then in force. Section 639, Rev. Stat. 1910, then in force, among other things, provided:

" . . . Said bonds shall be designated as 'Street Improvement Bonds,' and shall recite the street or streets, or parts of the street or streets, or other public places, for the improvement of which they have been issued, and that they are payable from the assessments which have been levied upon the lots and tracts of land benefited by said improvement, and from the accumulation of the surplus interest and penalties herein provided for. . . ."

Thereby the penalties when collected were made as much a part of the fund provided for the retirement of the bonds as the money derived from the original

assessments. The bondholder then has a vested interest in the money derived from the penalties as well, and to the same extent, as in the money derived from the assessments. This interest may not be divested by subsequent legislation.

The penalties must be treated the same as the assessment. Taking these matters into consideration, it is clear that the Legislature could not divest the bondholders of their interest in the fund. The special assessments, together with all penalties collected for these delinquencies, must be considered as one fund for the retirement of the bonds.

It follows that the proportionate share of the money, derived from the sale of lots, such as are here involved, going to the paving bondholder, must be based upon the total amount due and unpaid on special assessments together with all accrued penalties thereon. This is the view taken by the trial court and is clearly the correct interpretation of the law.

As to sewer special assessments, the law in force in 1913-1914, under which the warrants here involved were issued, by sections 469 and 470, Rev. Stat. 1910, did not provide that the penalties thereon, provided for in section 710, Rev. Stat. 1910, should be and became a part of the fund applicable to the retirement of the warrants; therefore, the warrant holder does not have a vested interest in the penalties as in the case of street improvement bondholders.

The penalties provided for under section 710, supra, are subject to disposition by the Legislature. The penalties did not go to the warrant holder. Seymour v. Oklahoma City, 38 Okla. 547, 134 P. 45. The court in that case quoted with approval from 13 Am. & Eng. Enc. of Law, p. 69, the following:

"The only general rule that can be laid down in reference to this matter is that, in the absence of any constitutional or statutory provision directing otherwise, the proceeds of fines and penalties imposed must go to that government, whether national, state, county, or municipal, whose laws or ordinances have been violated by the act or omission of the offender."

We have noted that such penalties are no part of the tax unless made so by statute. They are levied under the sovereign power and may be applied to such purposes as the Legislature may direct, subject, of course, to the constitutional provisions against impairment of contracts. Therefore, the Legislature may, subject to the limitation noted, direct their application in such manner as it may deem appropriate.

Viewing the provisions of article 31, ch. 66, S. L. 1939, as a whole, it is clear that the Legislature intended that the taxes, penalties, interest, and costs should all be included in computing and apportioning the proceeds of the resale of vacant lots, after deducting listing and advertising fees.

Briefs have been filed on behalf of the city of Muskogee and the board of education of said city suggesting that the statute of limitations be applied as barring plaintiff's claim. That issue was not before the trial court and is not properly before us, and may not be considered under the record.

The judgment and order awarding the writ are affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, GIBSON, and HURST, JJ., concur. RILEY and DAVISON, JJ., dissent. ARNOLD, J., absent.

---

DAVISON, J. (dissenting). I am unable to agree with the majority opinion in this case. It fails to recognize that liens for ad valorem taxes or for installments for special assessments for street improvements are not coequal from year to year and that priority between successive annual liens should be determined in the inverse order of their accrual.

My views respecting this question of priority are more fully set forth in my

special opinion in connection with Board of County Commissioners of Seminole County v. City of Wewoka, 191 Okla. 142, 127 P. 2d 26, this day decided. They will not be reiterated herein.

It is my opinion that the failure to frankly recognize the rule respecting priority of tax liens in the reverse order is fundamentally erroneous. Without its recognition the accumulation of liens will so encumber property as to destroy or render entirely ineffective the continuing power of the state to levy and collect taxes.

I therefore respectfully dissent.

I am authorized to state that Mr. Justice RILEY concurs in this dissent.