WARNER, Trustee, et al. v. DAY et al.

No. 32157. June 25, 1946.

*170 P. 2d 246.*

Forrester Brewster, of Muskogee, for plaintiff in error.

Richard Martin and Benj. Martin, both of Muskogee, for defendant in error Ernest Day.

W. R. Banker and A. Camp Bonds,

both of Muskogee, for defendant in error Carl S. Dalbey.

DAVISON, J. The controversy involved herein arose from a tax resale of lots 3 and 4 in block 8 of the Higgins addition to the city of Muskogee, Okla. The facts, as we understand them, are substantially as hereinafter related.

In 1929, under an oral arrangement between himself, R. C. Borum, and W. S. Warner, whereby he purchased real estate at tax sales with joint funds of the three, E. S. Warner purchased the above described lots for himself and his said associates at a tax resale held that year (presumably for delinquent ad valorem taxes only), taking title in his name as trustee for himself and the others.

In 1931 R. C. Borum purchased tax certificate No. 65 on lot 3 and tax certificate No. 66 on lot 4. The ad valorem taxes for each subsequent year on each lot (except for the year 1933 on one of the lots) were allowed to become delinquent and the lots sold to the county for said delinquent taxes. After each successive sale, Borum or one or more of the joint owners would redeem the lots and have the amount paid for the respective lot endorsed on one or the other of the above-mentioned tax certificates. According to the endorsements, redemption for some of the years was made in the name of R. C. Borum, some in the name of Warner, Borum, Warner, and one in the name of E. S. Warner.

In 1944 both lots were sold at resale for all the delinquent installments of city improvement taxes assessed against the lots as parts of paving districts 188 and 191 and sewer district No. 12. The total amount of such taxes, including the statutory penalty on lot 3, was $2,281.87, of which amount $1,883.96 was for paving and $403.91 was for sewer. This was an improved lot and was purchased at the resale by one Ernest Day for $1,365. The total amount of delinquent assessments on lot 4 was $2,332.52, of which $1,928.61 was for paving and $403.91 was for sewer. This was an unimproved lot and sold to one Norman E. Reynolds, Jr., for $145.

Thereafter Reynolds conveyed lot 4 to Day by quitclaim deed and Day commenced an action to quiet his title to both lots. Subsequently said cause was consolidated with an action brought by Carl S. Dalbey, holder of three of the paving bonds for payment of which the assessments in street improvement districts numbered 188 and 191 had been levied. Among the defendants in the consolidated action were Addie E. Butler, the holder of certain sewer warrants issued against the lots in sewer district No. 12, and R. C. Borum. In Borum's answer he stated that he had served the statutory notice required for the delivery to him of a tax deed based on tax certificates numbered 65 and 66 and would apply for same 60 days from the date of said service. He also alleged that if he did not receive said deed, he was entitled to a lien for the total amount of the tax payments shown on the certificates, plus interest.

In his petition, Dalbey asserted a prior lien on the proceeds of the tax resale of said lots, alleging that as neither of them sold for an amount sufficient to pay the paving taxes thereon, the entire amount thereof should be apportioned to improvement districts 188 and 191, and prayed that the county treasurer be enjoined from apportioning or distributing any part thereof to payment of the sewer warrants, or to the delinquent ad valorem taxes for which Borum claimed a lien by reason of his tax certificates.

After a trial to the court at which it was stipulated that the defendants E. S. Warner, trustee, E. S. Warner, R. C. Borum, and W. S. Warner were in possession of and receiving rentals from the lots, judgment was rendered quieting Day's title to the lots against all claims of the defendants and sustaining Dalbey's claim to the entire proceeds of the tax resale. The court spe-

cifically found that the sale canceled and extinguished all the unpaid assessments levied against the lots in street improvement districts numbered 188 and 191 and sewer district No. 12; that the unpaid paving assessments were a first and prior lien against the proceeds of said sales and that since said proceeds were less than the delinquent paving assessments, the entire sum should be applied thereon, and ordered the sale money disbursed accordingly. Both Borum and Addie Butler have appealed from said judgment.

Borum contends that the court erred in denying him a lien for the delinquent ad valorem taxes he had paid on the lots (as shown by tax certificates numbered 65 and 66, and certain of the endorsements thereon). On the authority of Board of County Commissioners of Seminole County v. City of Wewoka ex rel. North et al., 191 Okla. 142, 127 P. 826, he claims that said lien is coequal to Dalbey's lien for paving taxes and that same was not discharged by the resale of the lots for special improvement taxes only. Day admits that according to said decision a resale for ad valorem taxes only does not extinguish a lien for delinquent special assessments and that conversely such sale for special assessment taxes only would not extinguish a lien in favor of the county for delinquent ad valorem taxes, but says that such a rule is not applicable here, where the county's lien has been satisfied as evidenced by Borum's tax certificates in the present case. He says Borum has no lien as holder of said certificates, either on the lots or the proceeds of their resale, for his purchase of same and the payments endorsed thereon were in legal contemplation merely a mode of paying taxes which he and his joint owners, W. S. Warner and E. S. Warner, were already obligated to pay, citing the well established rule adopted by this court in Brooks v. Garner, 20 Okla. 236, 94 P. 694 (and applied in other cases to the present date) as follows:

"One who is under a moral or legal obligation to pay the taxes is not in a position to become a purchaser at a sale for such taxes; and if such person permits the property to be sold, and buys it in either in person, or indirectly through the agency of another, he does not thereby acquire any right or title to the property, but his purchase is deemed a mode of paying taxes."

Borum says this rule does not apply to this case for two reasons, the first of which is that he was under no obligation to pay the taxes on the lots, that this was the duty of his trustee, Warner, and that he as a cestui que trust or beneficiary of the trust estate was not personally responsible for obligations growing out of trust transactions. Though the legal title to the lots was in the name of E. S. Warner, as trustee, still Borum had an equitable interest therein, together with the other cestui ques, and by all of the authorities it was in all material aspects a taxable property interest so far as ad valorem taxation is concerned. See 54 Am. Jur. 93, sec. 102, pg. 95, sec. 105; Bogert, Trusts and Trustees, vol. 1, sec. 187, p. 524, sec. 191, p. 533; vol. 2, sec. 263, p. 845. 60 O.S. 1941 § 174 provides that liability for acts and omissions of the trustee extends to the whole of the trust estate, and 60 O.S. 1941 § 133 provides:

"Every person who, by virtue of any transfer or devise, is entitled to the actual possession of real property, and the receipts of the rents and profits thereof, is deemed to have a legal estate therein of the same quality and duration and subject to the same conditions as his beneficial interest."

The Oklahoma Trust Act recognizes the duty of the trustee of an express trust to pay taxes levied or assessed against the trust estate (60 O.S. 1941 § 175.24, par. K), but section 51 thereof (60 O.S. 1941 § 175.51) provides:

"For the purposes of assessments and collection of taxes by the State of Oklahoma and its political subdivisions, the statutes of the State of Oklahoma relating to and governing taxation shall supersede the provisions of this act."

Under our statutes governing ad valorem taxation, there can be no question but that Borum owned such an interest in the lots as to be deemed a taxpayer or owner of real estate. Under the broad general rule cited with approval by this court in Dowler et al. v. State ex rel. Prunty, 179 Okla. 532, 66 P. 2d 1081, a taxpayer may be anyone "who owns property within a town or municipality, subject to taxation." By 68 O.S. 1941 § 433a and 68 O.S. 1941 § 393 (now repealed) the right of redeeming real estate from tax sales is given the owner "or any person having a legal or equitable interest therein," and for years this court has followed Bowls v. Oklahoma City et al., 24 Okla. 579, 104 P. 902, 24 L.R.A. (N.S.) 1299, wherein approval was given authorities holding that a vendee of realty in possession under a contract of sale at the date of the assessment is the real owner for the purpose of taxation, whether he holds the legal title or not, and it was demonstrated that as between the holder of the legal title and one having equitable title, the fact that the latter is in possession and receiving rents is an important consideration. See, also, Boone v. Porter, 45 Okla. 615, 146 P. 584; Blaine County Bank v. Noble et al., 55 Okla. 361, 155 P. 532, 534, citing 37 Cyc. 1384. In accord with the above authorities it is therefore our opinion that prior to the resale, Borum had such an interest in the lots involved as to bring him within the rule of Brooks v. Garner, supra.

The further reason advanced by Borum for his contention that said rule does not apply here is that he owed Day and Reynolds, the purchasers at the resale of the two lots, no duty to pay the taxes, since they were strangers to the title of the lots rather than the owners of any interest previous to the sale. Superficially Borum's contention would appear to have support in some of the authorities. For instance, 51 Am. Jur. 921, sec. 1055, states:

"The doctrine which denies to one under obligation to pay taxes on land the right to strengthen his own title by the acquisition of title at a tax sale arising from his own delinquency was devised for the protection of persons whose interests in the land sold would be impaired if a person neglecting his duty to pay a tax were permitted to purchase the land at the resulting tax sale. Such person may, however, acquire a title which will be good against strangers. If the other persons interested in the property do not complain, a stranger cannot."

What is said above is supported by cases in some jurisdictions (see Spikes v. Beloate, 206 Ark. 344, 175 S. W. 2d 579; Burgett et al. v. Williford et al., 56 Ark. 187, 19 S.W. 750; United States v. Elliott, 164 U.S. 373, 41 L. Ed. 474), especially those in which the broad rule that an owner of land cannot add to or strengthen his title by purchase at a tax sale has been limited in its application to instances in which the owner's duty to pay his taxes was an obligation, either express or implied, which he owed another litigant by reason of privity or relationship with him such as a cotenant, a mortgagee, or someone for whom he was a fiduciary. See Cooley on Taxation (4th Ed.) vol. 3, p. 2851, § 1437; p. 2852, § 1438; annotation 136 A.L.R. 1145; 51 Am. Jur. 919, 920, § 1054, p. 922, § 1057. Many courts, however, do not limit application of the rule to cases where the owner's duty to pay taxes is also an obligation he owes another in privity with him, but also apply the doctrine where the duty is only that of a taxpayer to the state. This court is one of the latter. Thus, in Burnett et al. v. Cole et al., 193 Okla. 25, 140 P. 2d 1012, it was said:

"Defendant contends that he owed plaintiff no duty to pay the taxes on the mineral estate. But the right to acquire a tax title against another does not always rest on the question of whether a duty is owed to such other person. Defendant at least had a duty to pay his own taxes, and the question is whether he may profit by neglecting his own duty."

While we recognize that where as in this case the county's lien for ad valorem taxes has been satisfied, so

that the state cannot be said to have any complaint as the duty owing it, though performed tardily, has been performed at last (in this connection, see Cooley on Taxation (4th Ed.) vol. 3, p. 2854, § 1439, citing Coxe v. Gibson, 27 Pa. St. 160, 165) we do not think it wise to lay a precedent (as apparently some courts have; see Gaskins v. Blake, 27 Miss. 675) prohibiting, under all circumstances, the owner of land from strengthening his title by the acquisition of a tax title thereto, yet there are strong reasons why Borum's position should not be sustained herein. Most of the authorities recognize the equitable doctrine that one in possession of property as an owner should not be allowed to profit by neglecting his duty to pay the taxes thereon, and we think that he should likewise not be allowed to profit by paying them tardily and under compulsion, where to do so would unjustly enrich him at the expense of persons holding valid liens on the property. In this connection, see Black, Tax Titles (2nd Ed.) p. 338, § 274 et seq.; p. 362, § 289 et seq.; 51 Am. Jur. 921, § 1056; 140 A.L.R. 318. (For a case in which the owner of real estate was allowed to purchase same at a tax sale and no rights of other parties holding liens were involved, but as to situations in which the rights of adverse lienholders are involved, see Cooley, Taxation (4th Ed.) vol. 3, § 1437, p. 2851, note 79, citing Gilman v. Heitman, 137 Iowa 336, 347, 113 N.W. 932; Lane v. Wright, 121 Iowa 376, 96 N.W. 902, 100 Am. St. Rep. 362.) And the same principles apply where the owner purchases a tax certificate as where he purchases at resale, except that where he becomes the assignee of the certificate, it is considered a redemption. Black, Tax Titles (2nd Ed.) § 317, p. 395. In the present case, as pointed out by counsel for Day, if Borum were enabled to obtain out of the proceeds of the resale, reimbursement for payment of taxes it was the duty of him and his associates to pay, he would thus not only have enjoyed the benefits of ownership without sharing in the tax burden, but would be unjustly enriched at the expense of lienholders like Dalbey, the paving bond owner. Aside from the equitable considerations involved, this would set a bad precedent for all property owners. It would diminish the security and marketability of property improvement bonds and increase the number of tax delinquencies with resulting tax sales. In this connection, see Hadlock v. Benjamin Drainage District, 89 Utah, 94, 53 P. 2d 1156, 106 A.L.R. 876, 877, and Garvey v. Byram, 18 Cal. 2d 279, 115 P. 2d 501, 136 A.L.R. 1137.

Upon considerations of both equity and public policy, we are therefore of the opinion that the trial court correctly held that Borum was entitled to no lien on the proceeds of the resale of the lots involved herein. This conclusion in no wise conflicts with our opinion in Stith v. Gidney, 193 Okla. 175, 141 P. 2d 1003, cited by Day. There Gidney was merely a mortgagee not in possession and with no moral or legal duty to pay the taxes on the mortgaged lots involved.

The next question then to decide was whether the court was correct in according Dalbey's lien preference or priority over that of Addie Butler, the holder of the sewer warrants. The latter's counsel takes the position that since the lots were advertised and put up at the resale for the total amount of delinquent sewer assessments as well as paving assessments and the liens for both were canceled by such resale, the distribution of the money realized should be made ratably in accordance with the amount due on the respective assessments. He claims that this was the result in Allen v. Philpin, 191 Okla. 183, 127 P. 2d 839, which is the only authority cited in support of his argument. Our opinion in that case did not hold that liens for delinquent sewer assessments are co-equal with those for delinquent paving assessments. The question of priority of such liens was not involved and the only question decided was whether accrued penalties should be considered a part of ad valorem, paving or sewer assessment

liens in making a distribution of the re-sale proceeds.

The paving assessments here were levied under the authority of 11 O.S. 1941 § 103 (S. L. 1923, c. 173, para. 23). Therein it is expressly provided that special assessments for street improvements so levied shall constitute a lien "equal with the lien of other taxes and prior and superior to all other liens. . ." That said statute gives delinquent installments of paving assessments levied thereunder a lien co-equal with the first lien accorded ad valorem taxes is no longer open to question. See Board of Commissioners of Seminole County v. City of Wewoka, 191 Okla. 142, 127 P. 2d 826. Since special assessment liens are inferior to ad valorem tax liens unless the statutes provide otherwise (Nix v. Reynolds, 193 Okla. 15, 141 P. 2d 86) and no statute has been brought to our attention giving Addie Butler's sewer assessment liens co-equality or superiority to assessments levied under the statute above cited, we conclude that the trial court committed no error in holding the liens for delinquent sewer assessments inferior to those for delinquent paving assessments.

As we have found that the trial court committed no error in either of the particulars assigned as such, its judgment is hereby affirmed.

HURST, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, and CORN, JJ., concur.