L. M. BEVAN, same person as L. N. Bevan, and Nora Bevan, Plaintiffs in Error,

v.

Vera SHELTON nee Bevan and Rosa J. Rollings nee Bevan, Defendants in Error.

No. 42532.

Supreme Court of Oklahoma.

April 14, 1970.

Lon Kile, Hugo, for plaintiffs in error.

Hal Welch, Hugo, for defendants in error.

DAVISON, Justice.

The parties will be referred to by their trial court designations.

The basic facts are as follows: That the land in question was allotted to Sarah E. Oakes who died intestate in 1922, while owning it. She was survived by her husband, L. M. Bevan (defendant) and two daughters (the plaintiffs herein) and a third daughter, Oleta Bevan, who died, while still a minor, single and without issue, several years after the death of her mother. That under the laws of descent her interest was inherited by plaintiffs, in equal shares, whereby the land became vested, one-third in L. M. Bevan, and the other two-thirds equally in plaintiffs, subject to the statutory probate homestead of L. M. Bevan.

That after the death of Sarah, her husband, L. M. Bevan, married the defendant, Nora Bevan, and they, together with the plaintiffs, continued to live on the land until plaintiffs left the premises after their marriages. After plaintiffs left the premises the defendants continued to occupy the land as the probate homestead of L. M. Bevan.

For some years before 1940 the land had been assessed for taxes in the name of L. M. Bevan. The taxes became delinquent and in October, 1940, the land was sold at a legally and regularly conducted tax sale to O. W. Gollings.

Thereafter in November, 1940, Gollings commenced an action in the District Court of Choctaw County to establish the validity of all phases of the tax sale, and to eject L. M. Bevan and wife from the property. All the plaintiffs and defendants involved in the present action were made party defendants in that action. At the conclusion of the trial the trial court entered judgment in favor of the plaintiff in which it adjudicated the defendants therein, and each of them, had no right, title or interest in the property and quieted the title in plaintiff.

Thereafter in 1941 Gollings caused execution to be issued and L. M. Bevan and wife were ejected from the premises.

Within a few days after the ejectment L. M. Bevan's brother, W. P. Bevan, a resident of Texas, purchased the land from Gollings and soon thereafter deeded the premises to the defendants. The defendants obtained a mortgage on the land in an amount sufficient to repay W. P. Bevan his costs of the purchase from Gollings. This mortgage has been paid and released.

Plaintiffs based their case on the theory that L. M. Bevan was under a moral and legal obligation to pay the taxes assessed against the land; that when he failed to pay same, resulting in the tax sale, and when he thereafter purchased the land, such purchase was a mode of redeeming the land from the tax sale, and any interest so acquired inured to plaintiffs as to their respective rights and ownership.

The trial court rendered judgment for plaintiffs fixing their interests as prayed for and continued the probate homestead estate in L. M. Bevan, thus placing the interests of the parties in their respective rights and ownership as existed before the tax sale.

For reversal defendants rely on three separate propositions, the first two of

which will be discussed together, which are as follows:

### "PROPOSITION I"

"The judgment quieting title in Gollings terminated the tenancy in common that had theretofore existed between L. M. Bevan, Vera Shelton and Rosa J. Rollings."

### "PROPOSITION II"

"The rule that an outstanding adversary title acquired by a cotenant inures to the benefit of his fellow cotenants is operative only during the existence of the cotenancy. In the absence of fraud or collusion it has no application to purchases made after the cotenancy has come to an end."

In support of their first proposition defendants cite 20 Am.Jur.2d Cotenancy, Sec. 31, p. 122, and 86 C.J.S. Tenancy in Common § 12, p. 374. These citations deal with general law and are not pertinent to Oklahoma decisions where tax sales are involved.

We are of the opinion and hold that the case of Colby v. Stevenson, Okl., 265 P.2d 477, is decisive of the involved proposition, and adverse to defendants' contention The judgment quieting title in Gollings served only to adjudicate the validity of the resale tax deed and since its validity was there adjudicated, we must conclude that the tax sale was valid, and that if the "relationship" was terminated it was by reason of the tax sale and not by the judgment.

In defendant's second proposition, supra, for reversal it is urged that the rule is not applicable except: *"in the absence of fraud or collusion."* (Emphasis ours.) It will be noted that their proposition failed to state the further exception uniformly followed in this state, that is, *absent an obligation either moral or legal to pay the taxes for which the property was sold at tax sale.* (Emphasis ours.)

For determination of defendants' second proposition it becomes necessary to first determine whether L. M. Bevan was either morally or legally obligated to pay the taxes. We are of the opinion he was so obligated. He had a ⅓ interest in the land and was in possession of the property; the taxes were assessed in his name. Even if we assume that he owed no obligation to his two daughters to pay the taxes, he was obligated to the state for the payment of such taxes.

In the case of Warner v. Day, 197 Okl. 319, 170 P.2d 246, we said:

"'* * * Many courts, however, do not limit application of the rule to cases where the owner's duty to pay taxes is also an obligation he owes another in privity with him, but also apply the doctrine where the duty is only that of a taxpayer to the state. This court is one of the latter.'"

In the case of Burnett v. Cole, 193 Okl. 25, 140 P.2d 1012, we said:

"'* * * Defendant contends that he owed plaintiff no duty to pay the taxes on the mineral estate. But the right to acquire a tax title against another does not always rest on the question of whether a duty is owed to such other person. Defendant at least had a duty to pay his own taxes, and the question is whether he may profit by neglecting his own duty.'"

This court has for many years consistently held that one who is under a moral obligation to pay the taxes is not in a position to become a purchaser at a sale for such taxes; and, if such person permits the property to be sold, and buys it either in person or indirectly he does not thereby acquire any right or title to the property, but his purchase is deemed a mode of payment of taxes. Burnett v. Cole, supra; Warner v. Day, supra; Edwards v. Gardner, 198 Okl. 217, 176 P.2d 1014.

While it is true that the purchaser at the tax sale ordinarily receives a virgin title, yet when the person morally bound to pay the taxes repurchases the land the rule

of "public policy" steps in and prohibits him from absorbing and cutting off the right and title of his former cotenants.

## "PROPOSITION III"

"Cotenants of one purchasing outstanding title to common property must elect to avail themselves of the benefits of the purchase within a reasonable time."

On this proposition defendants have not relied on any statute of limitations.

In arguing this proposition defendants rely on such cases as Ammann v. Foster, 179 Okl. 44, 64 P.2d 653, and Patterson v. Wilson, 203 Okl. 527, 223 P.2d 770. These cases, like a number of other cases cited and relied on from other jurisdictions, deal with the right of one cotenant to acquire a title at a mortgage foreclosure sale, a judicial sale, and cut off the right of other cotenants. In the present case we are dealing with a tax sale where a different rule of law, as hereinabove outlined, is applicable.

In the present case L. P. Bevan had the exclusive right to possession of the land, as against plaintiffs, during his lifetime or until he abandoned it. The homestead right of L. P. Bevan was superior to the rights of his co-heirs (plaintiffs herein), the enjoyment of the property interest of such co-heirs being suspended during his life, or until his voluntary abandonment. Turner v. Hubbell, Okl., 288 P.2d 394.

■■ The homestead right of a surviving spouse is very similar to a "life tenant." The case of Smith v. Williamson, 208 Okl. 323, 256 P.2d 174, is authority for the general rule that laches, estoppel, or the statute of limitations will not run against the remainderman during the time the life estate is still in existence.

There was no repudiation of the rights and title of plaintiffs made by defendants to plaintiffs.

The trial court made exhaustive findings of facts and conclusions of law in the case at bar. Pertinent to the proposition under discussion the trial court particularly found as follows:

"It is clear from the evidence that plaintiff, Vera Shelton, who was living in Choctaw County throughout the negotiations culminating in the execution and delivery of the warranty deed to L. M. Bevan and Nora Bevan, was aware of the fact that her uncle, W. P. Bevan, the brother of L. M. Bevan, was in Hugo for the purpose of lending assistance to his brother; in fact, she testified that she called him over long distance telephone on the day of the ejectment at the request of her stepmother, Nora Bevan.

"There is no evidence from which this court can find that either of the plaintiffs, Rosa J. Rollings or Vera Shelton had any actual knowledge of the recorded instruments affecting the title to this land. There is no evidence that either L. M. Bevan or Nora Bevan advised either of the plaintiffs that their claim to the real estate was adverse to the two daughters. Both defendants, L. M. Bevan and Nora Bevan, testified that they thought in their own minds that they had acquired the full title to the 120 acres by the purchase from W. P. Bevan, and the court does not find any evidence to contradict this mental thinking of Mr. and Mrs. Bevan; however and by the same token, there is no evidence showing or tending to show that either of them imparted this mental thinking to either of the plaintiffs, and the court therefore finds in this connection that plaintiffs did not have any notice or knowledge of the adverse or hostile claim of L. M. Bevan and Nora Bevan other than that with which they may be charged under the law as a result of the recording of the several instruments above referred to.

"The plaintiff, Vera Shelton, testified that she learned during the year 1964 that her father and step-mother were negotiating for and preparing to sell the

120 acres, and thereafter she and her sister caused this suit to be filed on October 23, 1964."

The trial court further found and adjudged that the facts in the case were insufficient to show positive acts by defendants that any notice of any adverse holding was given or brought home to the defendants.

We have examined the record and weighed the evidence in this case of equitable cognizance, and conclude that the judgment rendered is not clearly against the weight of the evidence and should be, and is hereby affirmed.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS, BLACKBIRD, HODGES, LAVENDER, and McINERNEY, JJ., concur.

JACKSON, J., concurs in result.