The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following question: May the Legislature constitutionally appropriate funds and authorize expenditure thereof for the purpose of providing matching funds to subsidize Amtrak operations? By way of summary, the United States Congress enacted as Public Law 91-518, 84 Stat. 1327, codified as45 U.S.C.A. 501 et seq., the "Rail Passenger Service Act of 1970" (hereafter "Act"), a congressional authority to create the National Railroad Passenger Corporation, otherwise known as "Amtrak." Among the purposes of the Act was to require the designation of a basic national rail passenger system and the establishment of the rail passenger corporation for the purpose of providing modern, efficient, inter-city rail passenger service. 3 O.S. 301 [3-301] of the Act provides as follows: "There is authorized to be created a National Railroad Passenger Corporation. The Corporation shall be a for profit corporation, the purpose of which shall be to provide intercity rail passenger service, employing innovative operating and marketing concepts so as to fully develop the potential of modern rail service in meeting the Nation's intercity passenger transportation requirements. The corporation will not be an agency or establishment of the United States Government. It shall be subject to the provisions of this Act and, to the extent consistent with this Act, to the District of Columbia Business Corporation Act. The right to repeal, alter, or amend this Act at any time is expressly reserved. Emphasis Added The Act authorizes the President of the United States to appoint three (3) incorporators, the incorporators to take such actions as necessary to establish the corporation. Officer and directors of the corporation are appointed both by the President and by stockholders. 3 O.S. 303 [3-303]. Capital stock is issued in two (2) forms: (1) do the words "heliports" or "helicopters" even appear. Thus, we look to the Commission's general powers to determine whether they encompass the proposed funding. Two of the Commission's powers cataloged in 3 O.S. 85 [3-85] (1971) relate to funding. 3 O.S. 85 [3-85](g)(2) empowers the Commission to : "Render financial assistance by grant or loan or both to any municipality or municipalities acting jointly in the planning, acquisition, construction, improvement, maintenance, or operation of an airport owned or controlled, or to be owned or controlled, by such municipality or municipalities, out of appropriations or other monies made available by the legislature for such purposes . . . ." (Emphasis added) 3 O.S. 85 [3-85](h)(1) permits the funding of police airports and empowers the Commission to "acquire existing airports." (Emphasis added). Since the Commission's funding authority extends only to airports, the issue turns on whether the Legislature intended the term "airports" to cover heliports as well. At first glance, the general definitions in 3 O.S. 82 [3-82] (1971) seem broad enough to include heliports. "Airport" is defined in 3 O.S. 85 [3-85](c) as: ". . . any area of land or water which is used, or intended for use, for the landing and takeoff of aircraft, and any appurtenant areas which are used, or intended for use, for airport buildings, clear zones, buffer zones, or other airport facilities or rights-of-way, together with all airport buildings and facilities located thereon." On closer examination, however, this conclusion is unwarranted because legislation must be construed as a whole. Matter of Mid American Peterbilt, Okl., 593 P.2d 499 (1979); Allen v. Philbin, 191 Okl. 183, 172 P.2d 839 (1942). Construing the present legislation as a whole, we find that one of the Act's specific provisions narrows the scope of the term "airports." Title 3 O.S. 90 [3-90] (1979), relating to "construction and repair of airports in various counties," authorizes the Commission to build, enlarge, and maintain runways of a specified minimum length in various situations "in order to assure a safe and adequate system of airports within this state." Reading the general sections in light of the specific use of the term "airports" in 3 O.S. 90 [3-90], and considering the obvious fact that helicopters do not require runways, we can only conclude that the Legislature contemplated, not facilities for helicopters, but only those for fixed-winged aircraft. Moreover, by codifying in 3 O.S. 90 [3-90] its desire for minimally safe runways in each county, the Legislature has in effect given priority to the matter. Had the Legislature wished to include a provision for helicopter landing pads or heliports, it could have done so when 3 O.S. 90 [3-90] was amended in 1979. Unless and until the Legislature "common stock" which may be initially issued only to a railroad and (2) "preferred stock" issued to and held only by non-railroad owning stockholders. 3 O.S. 304 [3-304]. Among the general powers of Amtrak is the assumption of the "usual powers conferred on a stock corporation by the District of Columbia Business Corporation Act." 3 O.S. 305 [3-305]. For all practical purposes, Amtrak is a common carrier by railroad within the meaning of the Interstate Commerce Act. 3 O.S. 306 [3-306]. Title IV of the Act provides for the assumption of passenger service by Amtrak. Summarized, Amtrak is authorized to contract and, upon written request therefor from a railroad, shall tender a contract to relieve the railroad o its "entire responsibility" for the provision of intercity rail passenger service. Amtrak may provide intercity rail passenger service in excess of that prescribed for the basic national railway system, if consistent with prudent management. 3 O.S. 403 [3-403](b) provides as follows: "(b) Any State, regional, or local agency may request of the Corporation rail passenger service beyond that included within the basic system. The Corporation shall institute such service if the State, regional, or local agency agrees to reimburse the Corporation for a reasonable portion of any losses associated with such services." The Attorney General has previously held that rail service continuation payments may not be made by the State of Oklahoma to privately owned rail companies under the provisions of the Railway Revitalization and Regulatory Reform Act of 1976, 49 U.S.C.A. 1645(f)-(o). See Attorney General Opinion Nos. 76-227, 79-44, 79-108 and 79-799 (*ED NOTE: possible error on opinion 79-799). The bases for such opinions were that such payments constituted a "gift" within the meaning of the provisions of Article X, Section 15 of the Oklahoma Constitution and, further, that the expenditure of such funds did not constitute a "public purpose only" as contemplated under the provisions of Article X, Section 14 of the Oklahoma Constitution. The language of the Rail Passenger Service Act of 1970 is explicit in denominating Amtrak as a "for profit corporation" and in its characterization of Amtrak as not being "an agency or establishment of the United States Government." 3 O.S. 301 [3-301], supra. The payments contemplated by the Act constitute a reimbursement to a private corporation for operating losses associated with services performed by the corporation. The rationale of the previous opinions of this office applies equally to a subsidy to Amtrak. It is, therefore, the official opinion of the Attorney General that the Oklahoma Legislature may not constitutionally appropriate funds or authorize expenditure thereof for purposes of subsidizing operations of the National Railroad Passenger Corporation ("Amtrak"). (MANVILLE T. BUFORD) (ksg